G. F. HEUBLEIN, INCORPORATED, *vs.* THE SECOND NATIONAL BANK, EXECUTOR (ESTATE OF ELLA C. LIVERMORE).

MALTBIE, C. J., HAINES, HINMAN, BANKS AND AVERY, Js.

Argued April 7th—decided June 14th, 1932.

*Henry F. Parmelee* and *J. Harold Williams,* with whom was *Spencer Gross,* for the appellant (defendant).

*Josiah H. Peck* and *Reuben Taylor,* for the appellee (plaintiff).

AVERY, J. The defendant has asked for a correction of the finding to which it is entitled; and, from the

finding so corrected, the following facts appear: The plaintiff, a Connecticut corporation since November 21st, 1927, has been the owner of a piece of land in Hartford, Nos. 745-747 Main Street, being on the west side of that street, in the business center of the city, its street frontage being 24.15 feet. The plaintiff's property is bounded on the north by land formerly owned by Ella C. Livermore, and now by her estate, Nos. 751-753 Main Street, with a street frontage of 23.27 feet. The Second National Bank of New Haven is the duly qualified executor of the estate of Ella C. Livermore.

In the year 1854, the land of the plaintiff was owned by Charles W. Johnson, Richard D. Hubbard and fourteen others; and the Livermore land was owned by Howell R. Hills. January 20th, 1854, Johnson and Hubbard, on the one hand, and Hills, on the other, entered into a written agreement, for certain considerations, providing that Hills, who proposed to erect a building upon his property, would erect a wall upon the Johnson and Hubbard land, so that the whole north face thereof would be precisely on the dividing line between the two properties, Hills having the right to insert his timbers into the wall to a depth of four inches; the wall to contain two flues for mutual use, and "to be and remain as a division wall between the parties so long as it shall stand, and to be and remain for the joint use of the parties to this agreement." This agreement was never recorded in the land records of Hartford, and was not signed by the fourteen owners in common with Johnson and Hubbard. In 1883, however, Johnson acquired the interest of all the other owners by purchase at a partition sale. In the year 1854, buildings were erected on the adjoining properties, with a division or partition wall between them built in accordance with the terms of the agree-

ment. This wall was twelve inches thick and was entirely upon land now owned by the plaintiff, the north face of the wall being on the boundary line. Underneath were placed stone footings extending one foot on each side of the wall, so that two feet of footings were on the plaintiff's land, and one foot on defendant's land. In erecting the building on defendant's property, timbers were inserted in the wall to a depth of four inches for the support of the building so erected in accordance with the terms of the agreement. The buildings and wall are still standing.

The title to the property now owned by the plaintiff, having been acquired by Charles W. Johnson in 1883, was subsequently conveyed by him to Thomas G. Mills; and, on November 21st, 1927, it was conveyed by Mills to the plaintiff. The property now owned by the defendant came to Ella C. Livermore by descent from Howell R. Hills. Since the erection of the buildings, the division wall has been used continuously as a mutual or party wall for the benefit of the buildings. The boundary line between the properties continues to run along the north face of the wall. During its erection, at least two chimneys were constructed, and these chimneys have been used both by the plaintiff and defendant and their respective predecessors in title, and their respective tenants. In 1871, in order that the first floor of both buildings might be used as a single store, a portion of the division wall, between the ground floor and the ceiling of the first story, for a length of about sixty-eight feet, was removed by the tenant with the permission of the owners of both properties, and subsequently replaced. In the year 1892, by agreement with Ella C. Livermore, then the owner of defendant's property, Weston W. Walker, the lessee of the ground floor and other parts of both buildings, removed a part of the division

wall extending from the ground floor to the ceiling of the first story for a distance of about sixty-eight feet, and substituted for the part so removed a row of iron pillars. This part of the wall has never been replaced, and the pillars are still in position. From 1892 to March, 1930, the ground floor of both buildings, together with other parts thereof, were used and occupied by a grocery store, known as the Boston Branch. In March, 1930, the Boston Branch went out of business, and vacated the property, and neither of the buildings has been occupied since that date. June 26th, 1930, defendant's building was leased to a tenant for a term of twenty years, but the lessee has not occupied the premises, the building department of the city of Hartford refusing to permit them to be occupied on the ground that they are unfit for occupancy.

The plaintiff acquired its title to the property by a warranty deed (dated November 21st, 1927, and recorded in the Hartford land records) which contained the following provision: "Said premises are conveyed subject to any easements in abutting and adjoining properties respecting party wall," etc., and, also: "I, the said grantor, do for myself, my heirs, executors, and administrator, covenant with the said grantee, its successors and assigns that . . . the same is free from all encumbrances whatsoever . . . save and excepting easements in the nature of rights of adjoining properties respecting party walls . . . as hereinbefore set forth." When the plaintiff purchased the property, it had no actual knowledge that the wall was being used as a party wall for the benefit of the property next north. It would, however, have appeared from a casual inspection at the time that the wall was being used by both properties as a party wall. Both buildings are in a dilapidated condition and neither is fit for occupancy in its present condition. If the support

given to the wall by the remainder of plaintiff's building were removed, the division wall would not be adequate in strength to support defendant's building. The vibration incident to occupancy of the defendant's building would cause the wall to fall. Both buildings are within the inner fire limits of Hartford, and are what is known as "ordinary construction;" that is, the exterior walls are of masonry, and the window frames, floors and roofs of the interior construction are of wood. The building code of the city of Hartford permits the remodeling or repair of buildings of ordinary construction within the inner fire limits, provided the cost of remodeling or repairing does not exceed fifty per cent of the cost of the building. The building department of Hartford has refused to issue a permit for the occupancy of the building owned by the defendant on the ground that such occupancy would be unsafe, and has refused to permit repairs or remodeling of the building on its present construction, on the ground that the cost of such repairs or remodeling would exceed fifty per cent of the cost of the building. No appeal from this decision has ever been taken to the board of appeals or to any court. The present value of the building is not in excess of $17,000, although, for purposes of taxation, it is assessed for $30,000. To remodel the building so as to make it fit for occupancy, using ordinary construction, would cost something in excess of $12,000.

The trial court further found that in order to make the building fit for occupancy, the remodeling, if done by way of ordinary construction, would necessitate the use of heavier construction than that at present existing, so that the weight and stress upon the division wall would be greater and different than the weight and stress at the present time; that the defendant cannot remodel this building by the use of fireproof

or semi-fireproof construction (which the building department of the city of Hartford would permit) and still use the division wall to support its building, because the weight and stress of such construction would be too great for the wall to carry; and that both buildings are useless and the division wall is of no use to either the plaintiff or the defendant, or the respective properties.

The trial court concluded that although the original agreement for the construction of the party wall was not recorded, nevertheless, as the plaintiff and its predecessors in title had used the wall for more than fifteen years, it had acquired a title thereto by prescription; but that the extent of the rights so acquired were limited by and no greater than the terms of the contract; that the right of the defendant to use the wall as a party wall continued only as long as the wall should stand; and inasmuch as the wall would not stand if the artificial support given by the remainder of the plaintiff's building were removed, it does not now stand in contemplation of law. Further, the court concluded that the defendant's right to use the wall as a party wall continues only so long as the building which it supports is usable, so that the easement is of some value to the dominant tenant; and inasmuch as the building is no longer usable, nor to be made usable without increasing or modifying the burden upon the wall, the defendant's right to the use of the wall for that reason has ceased. The court accordingly rendered judgment that the defendant had no present right in the wall, and the plaintiff might remove the wall and build a new one in its place, and the defendant would have no right therein.

The defendant seeks to have stricken out the findings, above related, that the weight and stress upon the wall would be so increased by remodeling either

by way of ordinary or by fireproof or semi-fireproof construction as to be too great for the wall to carry, that neither of the buildings is usable and that the wall is of no use to either party. Examination of the evidence does not disclose any testimony definitely supporting the findings as to increased stress or that it would be too heavy for the wall. The experts testifying declined to express an opinion on the latter point without further investigation. As to the usability of the buildings, it appears that they and the wall in question are standing, but that the city authorities will not permit occupancy until certain changes in construction are made; however, there is no objection to remodeling or reconstructing them providing certain conditions of fireproof or semi-fireproof construction are complied with.

The plaintiff claims that the findings as to increased burden and the insufficiency of the wall to sustain it derive support from the certification that the trial court, with the consent of the parties, viewed the premises in dispute. It is true that evidence obtained by the court by its personal inspection as to the conditions observable on the properties is as truly to be considered by the court in rendering a decision as if presented by the lips of witnesses. *Heublein, Inc.* v. *Street Commissioners,* 109 Conn. 212, 218, 146 Atl. 20; *Hurlburt* v. *Bussemey,* 101 Conn. 406, 411, 126 Atl. 273; *Forbes* v. *Orange,* 85 Conn. 255, 257, 82 Atl. 559; *McGar* v. *Bristol,* 71 Conn. 652, 655, 42 Atl. 1000. But the facts found by the court exceed the scope of this rule. The trial court, by the mere inspection of the premises, could not say without evidence that to remodel the building by way of ordinary construction, the appellant must use heavier construction and thereby overburden the party wall; that to remodel by fireproof or semi-fireproof construction, the appellant

must necessarily overburden the wall; that neither building is usable (except as relates to its present condition); and that the party wall is of no use to either building. Only an expert could testify as to such matters, and no testimony in support of these paragraphs of the finding, except as to usability of the buildings in their present condition, was introduced in open court.

While a view of the premises would dispense with proof as to the facts which are apparent on observation, it will not dispense with proof as to matters requiring expert skill and knowledge, such as proper methods of construction, value and costs. In regard to such matters, a view by the court serves to enable it to gain a mental picture, often of great assistance in weighing the evidence of witnesses, but matters depending upon expert skill and judgment cannot be found by the court from a personal inspection alone, where no evidence whatever has been offered thereon by either party. *Wall* v. *United States Mining Co.*, 232 Fed. 613, 616, 617. It follows that the findings as to insufficiency of the wall should be eliminated and those as to usability modified as above indicated.

These corrections, which deprive of factual support the conclusion that the defendant's right to the use of the wall has ceased because the building is no longer usable nor to be made usable without increasing the burden upon the wall, also materially affect the basis of the further conclusion that the wall no longer stands in contemplation of law, which is stated to be that it "would not stand if the artificial support given by the remainder of the plaintiff's building were removed." Also, these conclusions, if supported by the facts, would not necessarily follow as a matter of law. Manifestly, it is necessary that the defendant's building should possess a southern wall; this is afforded by the

wall in question and such a wall is useful to the building for that purpose, as are the two flues contained therein. So long as the wall serves its purpose and is of benefit to the defendant, the plaintiff has no right to destroy it. *Carroll Blake Const. Co.* v. *Boyle,* 140 Tenn. 166, 175, 203 S. W. 945, 946. Each proprietor in a party wall owes to the other the duty to do nothing that shall weaken or endanger it. He has no right to tear it down, though on his land, and thus destroy the support of the building of the adjoining owner. 2 Cooley, Torts (3d Ed.) 750; *Christensen* v. *Mann,* 187 Wis. 567, 596, 204 N. W. 499, 509; *Miller* v. *Brown,* 33 Ohio St. 547. So far as concerns support, even if the wall were insufficient to entirely sustain the stress of a remodeled building, the defendant might supplement it so far as necessary upon her own land. 47 C. J. 1343; *Bennett* v. *Sheinwald,* 252 Mass. 23, 28, 147 N. E. 28; *Fleming* v. *Cohen,* 186 Mass. 323, 328, 71 N. E. 563; *Andrae* v. *Haseltine,* 58 Wis. 395, 398, 16 N. W. 610; *Brooks* v. *Curtis,* 50 N. Y. 639, 643. Further, the original agreement, the terms of which the trial court adopted as measuring the present rights of the parties, indicates that the purposes of the wall were not limited to support merely. Two flues therein for mutual use were specifically provided for and there was a general provision for use for such purposes as "may reasonably be intended." The court in its decision evidently had in mind those cases which hold that when a party wall, as to the maintenance of which there has been no grant of a perpetual right, is accidentally destroyed, as by fire, the destruction of the wall and buildings destroys the easement and a new building may be erected free from the easement. *Sherred* v. *Cisco,* 4 Sandf. (N. Y.) 480; *Heartt* v. *Kruger,* 121 N. Y. 386, 391, 24 N. E. 841; *Bowhay* v. *Richards,* 81 Neb. 764, 767, 116 N. W. 677, 678; 47

C. J. 1333. The applicable rule is, rather, that stated in *Odd Fellows' Asso.* v. *Hegele,* 24 Ore. 16, 23, 32 Pac. 679, 682, which involved a party wall agreement granting to each party an easement of support in the common wall "so long as it shall stand," as to which it was said: "The easements are mutual and relate to the wall only, and necessarily continue no longer than the wall remains safe and fit for the purpose it was intended to serve. As long as the wall remains fit and suitable for use, the easements of support exist; when the wall becomes unfit either from age or accident, the easement in it ceases."

Inasmuch as the subordinate facts do not support the ultimate conclusion of the court that the wall in legal contemplation is no longer standing because the defendant's building is no longer usable, and cannot be made usable without increasing the burden of the easement, the judgment based upon this conclusion is erroneous. The trial court has also found that if the support of the wall by the remainder of the plaintiff's building were removed, the wall would not be adequate to support the defendant's building so that it could be made fit for occupancy and that the vibration incident to such occupancy would cause the wall to fall. It is a right of the defendant to make such repairs or additions to the wall as may be necessary to make it adequate to support its building, provided it does not increase the burden of the easement to the plaintiff's land. *Fleming* v. *Cohen,* 186 Mass. 323, 328, 71 N. E. 563; *Carroll Blake Const. Co.* v. *Boyle, supra;* 47 C. J. 1343. But no duty rests upon the plaintiff to make repairs to the wall for the sole benefit of the defendant, nor is it bound to leave its own building standing merely to afford, by the remainder of it, additional support to the wall. While the plaintiff may not do anything to the wall itself to weaken it, it is

its right to tear down the remainder of its building, first giving such notice to the defendant as will enable it to make such repairs or additions to the wall as it desires to protect its own building. That being so, the fact that the wall would, in its present condition, be inadequate to support the defendant's building so that it would be fit for occupancy, if the remainder of the plaintiff's building is torn down, does not have the effect attributed to it by the trial court, of causing the wall to cease to exist as a party wall in the contemplation of the law.

This disposes of the case and it is unnecessary to consider the claim of the defendant that the building code of the city of Hartford is unconstitutional, or the errors claimed in the admission of evidence.

There is error; the cause is remanded to the Superior Court with direction to enter judgment in accordance with this opinion.

In this opinion the other judges concurred.