SOPHIE CACKOWSKI v. JACK A. HALPRIN, INC.

MALTBIE, C. J., BROWN, JENNINGS, ELLS and DICKENSON, JS.

632

Argued April 9—decided May 21, 1947

*James W. Carpenter,* for the appellant (defendant).

*Morton E. Cole,* with whom were *Milton Krevolin* and, on the brief, *Cyril Cole* and *Louis W. Webber,* for the appellee (plaintiff).

Brown, J.   Upon the retrial of this case pursuant to the judgment of this court upon the former appeal, the plaintiff had a verdict and judgment.   The defendant on this appeal assigns error in the court's

denial of its motion to set aside the verdict, as to the charge, and in a ruling upon evidence.

The jury could reasonably have found the following material facts. On August 16, 1941, the plaintiff and her husband were tenants of an apartment on the top floor of a four-story brick building on Main Street in Hartford. Their living room was at the southeast corner of the building and had two windows on the south and two on the east. Their bedroom adjoined it on the west and the kitchen on the north. These rooms were served by connecting doorways, and a door on the north side of the kitchen opened into the toilet. There were also doors between a hallway and each of the first three rooms. The owner of the building had contracted with the defendant, a builder, for the installation of a new cornice in place of the old along the outside of the east and south walls of the building. Before starting work about the middle of July, 1941, the defendant's general manager inspected the interior of the plaintiff's apartment, including the plaster walls and ceiling of the living room. The ceiling was thirteen and one-half feet above the floor. At that time cracks and water stains from a leak in the roof were plainly visible in the ceiling near a hanging electric fixture at about the center of the room.

The defendant then proceeded, in preparation for the cornice work, to build a scaffold. Its floor ran along the outside wall and was supported by planks set on edge and extending horizontally from the interior through the top-floor windows. At the inner end, each of these timbers in the plaintiff's living room was spiked or nailed to a door jamb about six feet above the floor and was supported at the window, on a level just above the top of the lower sash, by an

upright resting on the sill. These timbers were four-teen feet or more in length and projected at least four feet beyond the face of the building. There were some óne by two inch uprights connecting the ceiling joists with the rafters of the roof a few inches above. By reason of the horizontal timbers, the up-per sash of the windows of the apartment remained open for a month prior to August 16, and it rained on seventeen of the days during this period. It took three or four weeks to build the scaffold, in the course of which three men were engaged for a day and a half in the plaintiff's apartment. The work on the cornice was next done, and just prior to August 16 the removal of the scaffold had been partially com-pleted. Hammers were used by the defendant's em-ployees in driving nails and spikes for the erection of the scaffold and in fastening the new cornice to the roof timbers, and they used pinch bars and ham-mers in connection with the removal of the old cor-nice and the installation of the new. The defendant's workmen passed back and forth through the apart-ment during the work and repeatedly walked across the roof and threw pieces of the old cornice on to it over the living room. Much of the time while they were at work and handling material they stood or walked on the floor of the scaffold.

These acts of the defendant's employees during the four or five weeks that the work was going on caused considerable and recurrent stress, strain, and vibration at those points where the force involved was applied, which were transmitted by the structure of the building and the scaffold to the ceiling of the living room to an extent sufficient to cause the vibra-tion thereof with deteriorating effect. In conse-quence, as the work progressed, additional cracks

appeared in the ceiling and particles of plaster continued to sift down into the room. This persisted up to and until August 16, and during this period the defendant's employees and its general manager frequently entered the room and knew or should have known of the existing conditions, which were open and visible. Nothing was done to safeguard the situation. On the morning of August 16, when the defendant's men were not working, the plaintiff went into the living room and a heavy piece of plaster about four feet wide and five feet long, covering the area of the ceiling which was cracked and stained, as already described, fell and struck her on the head, resulting in the injuries complained of. The plaintiff was not guilty of contributory negligence.

There was undisputed testimony that, for several months before the plaster fell, rain water had leaked through the roof onto the ceiling in that area. The defendant offered expert opinion testimony that this had resulted in a disintegration of the plaster which caused the ceiling to come down, and that the defendant's conduct in doing the work did not cause its fall. No expert testimony was produced by the plaintiff. The defendant contends that in the absence of such evidence the jury were unwarranted in finding that what the defendant did caused the plaster to fall, because "the questions involved are peculiarly within the realm of expert and not common knowledge," citing *Heublein, Inc.* v. *Second National Bank*, 115 Conn. 168, 175, 160 A. 898. That case, where an intricate engineering problem was involved as to what would be required to remodel a building by specified types of construction and as to what the effect thereof upon an existing party wall would be, is clearly distinguishable from the instant case. Here, in view

of the weakened condition of the ceiling to begin with, the further cracks that appeared as the work progressed and the dropping of particles of plaster which continued until the ceiling finally fell, considered in connection with the proximity and the structural relationship of the ceiling to the top of the door jambs to which the horizontal timbers were nailed, the short uprights between the ceiling and roof where other force was applied, and the rigid structural connection between the ceiling and the floor of the scaffold upon which force was again and again brought to bear, it certainly was not beyond the realm of common knowledge that, by reason of force set in motion by the defendant and of its prolonged exposure of the ceiling to the damp outdoor atmosphere by keeping the windows open, it was more probable than not that its acts caused the plaster to fall. In the light of these facts, "The circumstances were not such as to render expert testimony either essential or conclusive. *Gannon* v. *Kresge Co.*, 114 Conn. 36, 38, 157 Atl. 541; 2 Wigmore, Evidence (3d Ed.) § 568." *Sapiente* v. *Waltuch*, 127 Conn. 224, 227, 15 A.2d 417. The jury could reasonably have found not only that the defendant was negligent in employing the method of doing the work which it did, in view of the conditions known or which should have been known to it, but also that, whatever the effect of the leaky roof upon the disintegration of the plaster, this negligence was a proximate and immediate cause of the fall of the ceiling. See *Vinci* v. *O'Neill*, 103 Conn. 647, 653, 131 A. 408. The court did not err in denying the motion to set aside the verdict.

By reason of its failure to comply with § 156 of the Practice Book, the defendant takes nothing by the assigned errors in the charge as given. *Figlar* v.

*Gordon,* 133 Conn. 577, 583, 53 A.2d 645. Certain of the requests to charge which the court refused to give do call for consideration. One related to the weight to be accorded evidence introduced by the defendant "that the work, methods, tools and equipment conformed to standard practice, . . . where, as here, the work being done involved problems or difficulties which are not within the range of common knowledge." Since the problems involved in this case, as pointed out in the preceding paragraph, did fall within that range, this request was properly refused. The gist of another requested instruction was that, unless the vibrations "from the defendant's work were greater than those reasonably required due to the work contracted for, I charge you that you cannot find the defendant negligent in that respect." The duty which the defendant owed the plaintiff was to use reasonable care under the circumstances and if it breached that duty it was negligent. Upon the record before us, that the defendant had a contract for the work with a third party, the owner of the building, was not a material circumstance under this rule. Whether the instruction requested would have been appropriate in an action brought by the landlord as plaintiff we have no occasion to determine. The defendant was not entitled to it here.

Another charge requested was to the effect that, if the sole cause of the ceiling's fall "was the rain leaking through the roof for months before the accident, . . . and . . . none of the acts of the defendant contributed thereto," the verdict must be for the defendant. Since the defendant claimed that the rain was the sole cause, the court properly might have granted this request. Nevertheless, while it did not specifically mention the effect of rain as a

cause, it did, after referring to the plaintiff's claim that the work done by the defendant had caused the ceiling to fall, further state: "If you should conclude, however, that the work which the defendant was doing did not weaken the ceiling and did not cause it to crack and fall, as alleged, then, of course, the plaintiff would not be entitled to recover." Under the circumstances the failure to charge as requested could not have materially prejudiced the defendant. The claims of proof show that a material controverted issue was whether the force applied by the defendant at various points during the course of the work, as already recited, was transmitted to the ceiling in such manner as to contribute materially to its fall. In this connection the defendant requested an instruction that, since the defendant had had no direct contact with the ceiling, in order to conclude that the defendant's work was a proximate cause of its fall the jury must find by the weight of the evidence that "the vibrations from the work at the place or places where the force was applied probably, and not merely possibly, traveled to and so weakened the ceiling that it was thereby caused to fall on the Saturday in question while the defendant's men were not in or on the building." In view of the court's charge that the jury could draw only reasonable inferences and that the burden of proof was upon the plaintiff to prove by a fair preponderance of the evidence that her injury was due to the fall of the plaster and that this resulted from the negligence of the defendant, the failure to give the specific charge requested was not harmful error.

The defendant called its general manager as a witness. During his direct examination concerning the work done and the probable cause of the ceiling's

fall, he testified to the number of visits he had made to the premises. On cross-examination, in answer to a question asked for the purpose of affecting the witness' credibility as to the number of these visits, he was permitted over the defendant's objection to state that his company did repair the ceiling after it fell. Thereupon, over further objection by the defendant, he was allowed in answer to another question to state that at the prior trial he testified that he had never repaired any ceilings in that building. In its charge, the court specifically referred to this testimony and instructed the jury that, if they found that this witness "did make inconsistent statements in this and the former trial with respect to the repairs," that was simply one of the facts in evidence which bore solely upon the question of the credibility to be accorded his testimony. The court did not err in this ruling.

There is no error.

In this opinion the other judges concurred.