SARAH BERGER, PLAINTIFF-RESPONDENT, v. SAMUEL SHAPIRO, DEFENDANT-APPELLANT.

Argued April 21, 1959—Decided June 1, 1959.

*Mr. H. Curtis Meanor* argued the cause for the defendant-appellant (*Messrs. Emory, Langan, Lamb & Blake,* attorneys; *Mr. James J. Langan* and *Mr. H. Curtis Meanor,* of counsel).

*Mr. Herman M. Wilson* argued the cause for the plaintiff-respondent.

The opinion of the court was delivered by

PROCTOR, J. The Appellate Division reversed a judgment dismissing plaintiff's negligence suit at the close of all the evidence. 52 *N. J. Super.* 94 (1958). We certified upon the defendant's application. 28 *N. J.* 306 (1958).

The plaintiff, Sarah Berger, an elderly woman, came from Florida to visit her daughter and son-in-law, Samuel Shapiro, the defendant, at their home in Cedar Grove, New Jersey. She had been staying there for about two or three weeks prior to the accident which occurred on September 13, 1955. The plaintiff has been suffering from glaucoma for the past 13 years and her vision is greatly impaired. She testified that while she can "see a little, * * * enough to get around when I am close," her vision is not at all clear and that "[e]verything is shadowy like." Her vision at the time of the trial was the same as when the accident occurred. She had difficulty at the trial in examining a photograph of the scene of the accident.

On the day of the accident she was alone on the front lawn of the defendant's house. Her sister, who was also a visitor, was inside and her daughter was next door with a neighbor. Mrs. Berger decided to go into the house. She

had never before used the front entrance without assistance and generally used the rear entrance where there was a banister. She testified:

"I felt I wanted something so I got up to go into the house. I very seldom go alone but my daughter wasn't home just yet. My sister was in the house. So I thought I will go myself. So I walked up slowly, up the steps, and when I opened the door, I went back so the door would open, and my foot went into something that was empty and I fell down and broke my foot."

She fell from the porch to the ground, a distance of about four and a half feet, breaking her heel and ankle. A rose-bush situated close to the right front side of the porch was broken by her fall. On cross-examination she testified as follows:

"A. I walked up the steps all right. I walked slowly and then when I went to open the door, so I went this way to open the door, stepped back to get in and my foot went into something that was empty; I don't know what.
Q. You don't know what that was? A. No, I didn't know; at that time I didn't know."

Later when she was recalled to the stand and shown the photographs of the steps she testified:

"Q. Did you have your hand, which hand, on the door? A. This door. I had it on the door to open it. I went back to get the door because the door is on this side. So I was on this side. I opened the door. I stepped back to open the door, my foot fell into something that was like empty. I didn't know what it was and I went down.
Q. When you did step back you had your hand on the knob of the door to open it? A. Yes.
Q. Where did you fall? A. On the lawn, the front lawn. Right on the side where I fell; on the side where I fell. I fell right to the side."

And on further cross-examination she said:

"I opened the door, I stepped back, I went down this way right off the porch."

The record does not indicate whether the plaintiff, in conjunction with the above quoted testimony, is pointing to the photograph or physically demonstrating the manner in which she fell.

The front porch of the defendant's house is reached by ascending four brick steps. The top step connects with a cement porch which defendant estimated to be about two and a half feet in depth. The front screen door opens from right to left (facing the house). There is no guard or railing on the right side of the porch. There was a brick missing from each end of the top step. Mrs. Shapiro, the wife of the defendant, testified that she removed the two bricks about two months before the accident and at least one month before her mother arrived for her visit. She said she did so because she discovered the bricks were loose and that she informed her husband of what she had done. Her husband, testifying in his defense, admitted that his wife had told him about two months before the accident that she had removed the bricks and wanted him to replace them. He told her that he intended to install iron railings in the spaces created by the missing bricks. This was never done. The plaintiff's eye condition was known to both Mr. and Mrs. Shapiro.

The theory of plaintiff's case was that while opening the front door she fell when she stepped backwards into the space created by the missing brick at the extreme right front side of the top step, and that the defendant's failure to have replaced the brick, having had knowledge and opportunity to do so, constituted a breach of his duty of care owing to her.

At the conclusion of the entire case defendant's attorney moved for a judgment of involuntary dismissal on two grounds: (1) that the plaintiff was a social guest and the only duty owing to her was that of refraining from willful or wanton conduct; (2) the plaintiff was guilty of contributory negligence as a matter of law. The trial judge, without ruling on either of these grounds, granted the motion for want of evidence of proximate cause and said:

"I don't think there is any evidence from her testimony to indicate that this space caused by the removal of the brick was the cause of her fall. She says she fell, she stepped into open space."

The Appellate Division in ordering a new trial held that in view of plaintiff's testimony that her foot "went into" or "fell into" something, the jury might reasonably infer that the "something" was the space left by the missing brick and thus this condition was the causal factor in her fall. The Appellate Division also held that from the evidence the jury could find that the defendant violated a duty owed to the plaintiff. It further held that plaintiff was not guilty of contributory negligence as a matter of law.

On this appeal the defendant first contends that he did not violate any duty owing to the plaintiff. Both parties agree that at the time of the accident plaintiff was a social guest of the defendant. As such, the great weight of authority classifies her as a licensee, notwithstanding that her presence at the defendant's home may have been at his express invitation. 2 *Harper and James, The Law of Torts,* § 27.11, *p.* 1476 (1956); *Prosser, Torts* (*2d ed.* 1955), *p.* 447; *Vogel v. Eckert,* 22 *N. J. Super.* 220 (*App. Div.* 1952). The *Restatement of Torts,* § 331, defines a social guest as a gratuitous licensee. While a social guest is on the premises of another as a result of an "invitation" in the layman's sense of that word, this court has said that he is not entitled to as high a degree of care for his safety as one who is on the premises to confer some benefits upon the invitor other than purely social. *Taneian v. Meghrigian,* 15 *N. J.* 267, 275 (1954). See also *Annotation,* 25 *A. L. R.* 2d 598 (1952). In the latter situation the person is regarded in the law as an invitee or, in the terms of the *Restatement, supra,* § 332, a "business visitor," and is owed a greater duty of care than a licensee. In *Finnegan v. The Goerke Co.,* 106 *N. J. L.* 59 (*E. & A.* 1929), it was held that a customer in the store of the defendant was an invitee or business visitor to whom the defendant owed a duty to

exercise reasonable care to maintain the premises in a reasonably safe condition. See also *Murphy v. Kelly,* 15 *N. J.* 608 (1954); *Bohn v. Hudson & Manhattan R. Co.,* 16 *N. J.* 180, 185 (1954).

In the present case we must determine what duty the defendant as host owed to the plaintiff, his social guest. We are not here concerned with an activity being conducted on the premises by the host at the time of his social guest's presence. In such case the host is under an obligation to exercise reasonable care for the protection of his guest. *Cropanese v. Martinez,* 35 *N. J. Super.* 118 (*App. Div.* 1955); *Restatement, supra,* § 341. The door, porch and steps were in the same condition at the time of the accident as they were for about two months prior thereto and therefore constituted an existing or static condition of the premises. See *Cropanese v. Martinez, supra; Dunster v. Abbott,* 2 *All Eng. L. R.* 1573 (*Ct. App.* 1953).

There are decisions in this State in which it has been held that the obligation of a host to his guests is merely to refrain from willfully and wantonly injuring them. *Sohn v. Katz,* 112 *N. J. L.* 106 (*E. & A.* 1934); *Gregory v. Loder,* 116 *N. J. L.* 451 (*Sup. Ct.* 1936). The rationale of this doctrine is that the guest understands when he accepts the hospitality of the host that he is temporarily adopted as one of the family and he expects that the host will take the same care of him as he does of himself and the other members of his family and no more. As a consequence, the guest must accommodate himself to the conditions of his host and take the property as he finds it. *Morril v. Morril,* 104 *N. J. L.* 557 (*E. & A.* 1928), citing *Southcote v. Stanley,* 1 *H. & N.* 247, 25 *L. J. Exch.* 339 (1856); *Lewis v. Dear,* 120 *N. J. L.* 244 (*E. & A.* 1938). Thus the host need not undertake to make improvements or alterations to render his home safer for those accepting his hospitality than for himself. *Comeau v. Comeau,* 285 *Mass.* 578, 189 *N. E.* 588, 92 *A. L. R.* 1002 (*Sup. Jud. Ct.* 1934). However, there developed quite early an exception to the

above rule. This imposed upon a land occupier an obligation to disclose to the licensee any concealed dangerous condition upon the premises known to the former. *Prosser, supra, p.* 449. As early as 1858 in *Corby v. Hill,* 140 *Eng. Rep.* 1209, 4 *C. B. N. S.* 556, the possessor of land was held liable to a licensee who sustained injuries when he collided at nighttime with a stack of slates which had been negligently placed by the possessor's servants on his private road without warning the licensee of such obstruction. The principle of the *Corby* case, that the possessor of land is under an obligation to disclose to the licensee any concealed dangerous condition of the premises of which he has knowledge, has been reiterated in many of our cases. *Phillips v. Library Co.,* 55 *N. J. L.* 307 (*E. & A.* 1893); *Morril v. Morril, supra; Lordi v. Spiotta,* 133 *N. J. L.* 581, 584 (*Sup. Ct.* 1946); *Taneian v. Meghrigian, supra,* 15 *N. J.* at *page* 274. Often the reference to this principle is expressed in language to the effect that the landowner may not knowingly maintain a trap for his guest or licensee. Undoubtedly the word "trap" is employed in a broad sense, *i. e.,* any dangerous condition which the licensee cannot reasonably be expected to observe and avoid. 2 *Harper and James, supra,* at *p.* 1473; *Prosser, supra,* at *p.* 449.

■■ This exception appears to be a recognition that, while the social guest (gratuitous licensee) may be required to accept the premises as the host (licensor) maintains them, he is at least entitled to the same knowledge possessed by the host of dangerous conditions and should not be expected to assume the risk of such conditions in the absence of a warning. The host is not required to inspect the premises to discover defects or to maintain them in a safe condition for his guest, but if he knows of any defective or dangerous condition, he must exercise reasonable care to correct the condition or warn the guest of the danger. *Vogel v. Eckert, supra; Annotation, "Duty of a possessor of land to warn adult licensees of danger,"* 55 *A. L. R. 2d* 525 (1957); 2 *Harper and James, supra,* 1471; see *Mistretta*

*v. Alessi,* 45 *N. J. Super.* 176 *(App. Div.* 1957); *Debes v. Morganroth,* 48 *N. J. Super.* 39 *(App. Div.* 1957). If the guest is aware of the dangerous condition or by a reasonable use of his faculties would observe it, the host is not liable. *Pearlstein v. Leeds,* 52 *N. J. Super.* 450 *(App. Div.* 1958), certification denied 29 *N. J.* 354 (1959). See *Imre v. Riegel Paper Corp.,* 24 *N. J.* 438 (1957); *Note, "Landowners' Liability in New Jersey: The Limitation of Traditional Immunities,"* 12 *Rutgers L. Rev.* 599, 610 (1958).

■ The exception relating to a dangerous condition on the premises which is known to the host and which he has reason to believe his guest cannot be expected to observe and avoid has been encompassed in the *Restatement, supra,* § 342. We believe that in the home host-guest relationship this section represents the law of this State:

"A possessor of land is subject to liability for bodily harm caused to gratuitous licensees by a natural or artificial condition thereon if, but only if, he

(a) knows of the condition and realizes that it involves an unreasonable risk to them and has reason to believe that they will not discover the condition or realize the risk, and

(b) invites or permits them to enter or remain upon the land, without exercising reasonable care

(i) to make the condition reasonably safe, or

(ii) to warn them of the condition and the risk involved therein."

■ The principles there set forth are applicable to the present case. Defendant, however, contends that the absence of the brick from the top step does not qualify as a concealed danger because "[i]t was an open and obvious condition and it should be remembered that this accident occurred in the daylight." But can it reasonably be said that this condition was one which the plaintiff would be expected to observe and avoid? The defendant knew of plaintiff's deficient eyesight. Her infirmity caused her to move in a perpetual twilight and therefore the jury could conclude that the defendant should have known that the defective condition of the step was not one which the plaintiff would be ex-

pected to observe. Furthermore, the jury could have found that defendant should have anticipated that at some time during her relatively long stay at his home the plaintiff would enter the house alone by the front door.

The defendant further contends that there was no "evidence that he realized the condition held any risk, much less an unreasonable one." The defendant knew of the missing brick in the top step and it was for the jury to determine whether or not a reasonable man would realize it created a hazard. The inquiry is not whether the defendant realized the condition held any risk but whether a reasonable man would be cognizant of it.

"If an occupier actually knows of a state of affairs on his land which a reasonable man would realize was a danger, he should not be allowed to escape from his responsibilities on the plea that he was not a reasonable man and did not realize it." *Hawkins v. Coulsdon and Purley Urban District Council*, (1954), 2 *W. L. R.* 122, cited in *Taneian v. Meghrigian, supra*, 15 *N. J.* at *page* 277.

Defendant argues that the plaintiff did not prove a lack of a warning of the condition. Lack of an adequate warning or notice of the condition was an essential element of the plaintiff's right of recovery. Thus, the burden of proof was on her to show the failure of the defendant to give such a warning. *Valles v. Peoples-Pittsburgh Trust Co.*, 339 *Pa.* 33, 13 *A. 2d* 19 (*Sup. Ct.* 1940). Whether or not the defendant warned the plaintiff of the condition was not peculiarly within his knowledge but was known as well by the plaintiff. Therefore, this case does not fall within the class to which the rule is applied that a plaintiff need not prove a negative but may require the defendant to prove the fact because of his superior means of knowledge. 9 *Wigmore, Evidence* (3d ed. 1940), § 2486; *cf. Canada Dry Ginger Ale, Inc. v. F & A Distributing Co.*, 28 *N. J.* 444, 453 (1958). However, it is implicit in the plaintiff's testimony that she did not know of the defect prior to the accident. An inference could properly be drawn therefrom that no warning had been given. Moreover, defendant's

motion for judgment did not include this ground. If it had been included, the trial judge, to serve the interest of justice, in all likelihood would have given the plaintiff an opportunity to present further proof on the point.

Defendant next contends that there was no evidence showing a causal connection between the defendant's negligence and the plaintiff's injury. In passing upon a judgment of involuntary dismissal we must view the evidence in its most favorable light to the plaintiff. *Melone v. Jersey Central Power & Light Co.*, 18 *N. J.* 163, 170 (1955). Our examination of the testimony and the photographs in evidence leads us to conclude that the Appellate Division correctly determined that this issue should have been submitted to the jury. Considering the plaintiff's position on the porch in relation to the vicinity of the missing brick, which was at the right front corner of the top step, together with the shallowness of the porch, the jury could find that it was reasonably probable that she stepped into the cavity created by the missing brick. She was in the act of opening the door, which opened from her right to left. She had her left hand on the door and as she opened it toward her she necessarily stepped backwards when her "foot went into something that was empty." The jury could conclude that this backward movement brought her foot to the space formerly filled by the missing brick. The breaking of the rosebush by the plaintiff's fall and its location near to the right front corner of the porch and the steps supports the probability that plaintiff's fall was due to the cavity caused by the missing brick. It is also significant that defendant did not urge lack of causation as a ground in support of his motion. See *R. R.* 4:51–1, which requires that a motion for judgment shall state specifically the grounds therefor.

Defendant further contends that "[n]o expert evidence was brought forth to show either that the missing brick created a dangerous condition or that its removal did not conform to the appropriate standards of construction."

However, we think it is obvious that an expert need not be called to inform a jury as to the nature of a condition caused by a missing brick in the top step of a porch. See *Cackowski v. Jack A. Halprin, Inc.*, 133 *Conn.* 631, 53 *A. 2d* 649 (*Sup. Ct. Err.* 1947); cf. *Shafer v. H. B. Thomas Co.*, 53 *N. J. Super.* 19, 24–25 (*App. Div.* 1958).

 Defendant finally contends that the plaintiff was guilty of contributory negligence as a matter of law. This contention is based on the premise that in the light of plaintiff's advanced years and physical condition, notably her impaired vision, her attempt to mount the front steps unaided when a reasonably safe alternate route was available was an unreasonable disregard for her own safety. The alternate route which defendant refers to was the rear entrance which was equipped with a banister and which plaintiff testified she normally used. As a general rule those persons who know that their faculties are impaired must conduct themselves as the reasonable man would in the light of such disability. *Buttelli v. Jersey City, H. & R. Electric Ry. Co.*, 59 *N. J. L.* 302 (*Sup. Ct.* 1896); 2 *Harper and James, supra*, § 16.7. It is common knowledge that many persons with greatly impaired vision have mastered their handicap to a point where they move about unaided. Plaintiff has been suffering with her present eye condition for 13 years. There was evidence of her ability to move about by herself. She apparently came alone from Florida for the visit with her daughter and later to attend the trial. The fact that she had never before used the front entrance without assistance was merely one of the many factors to be considered in evaluating her conduct. This court has repeatedly said that contributory negligence is ordinarily for the jury, and that in order to justify a judgment as a matter of law on that ground, the contributory negligence of the plaintiff must appear conclusively as a fact or as a necessary and exclusive inference that would be drawn by all reasonable men. *DeRienzo v. Morristown Airport Corp.*, 28 *N. J.* 231, 240 (1958); *Battaglia v. Norton*, 16

*N. J.* 171, 179 (1954); *Gudnestad v. Seaboard Coal Dock Co.*, 15 *N. J.* 210, 222 (1954). Moreover, in order to bar a recovery as a matter of law it must be conclusively established that such negligence proximately contributed to the plaintiff's injury. *Paolercio v. Wright*, 2 *N. J.* 412, 413, 418 (1949). The evidence in the present case does not lead us to such a conclusion. Whether the plaintiff failed to exercise reasonable care for her own safety and whether such failure proximately contributed to her injury were questions for the jury to resolve.

The judgment of the Appellate Division is affirmed.

HALL, J. (dissenting). My disagreement with the majority's conclusion of affirmance is based on the holding that there was sufficient evidence from which a jury could properly find that plaintiff's fall was caused by stepping into the cavity created by the removal of the brick at the corner of the porch. In my opinion the trial judge was eminently correct in granting defendant's motion for judgment at the end of the entire case for lack of adequate proof of that vital element.

The only evidence on the question was plaintiff's own testimony, fully quoted in the majority opinion, in which she said in practically identical words on each of the three times she was asked about the matter, that her foot "went into" an unknown "something that was empty." Significant to me is that she did not say or even intimate that her foot touched anything. This it seems would have had to have happened, and as to which she would have testified had it occurred, if she in fact had stepped into the relatively small space of the missing standard brick ($2\frac{1}{4}''$ wide, $3\frac{3}{4}''$ deep and $8''$ long). What she said and what she did not say is to me physically consistent only with having stepped completely off the porch itself at the corner. The broken rosebush, suggested by the majority as supporting the probability of plaintiff's theory, is so located that it would have been damaged under either hypothesis.

I can, therefore, see no reasonable inference of *probability* that the accident was caused by stepping into the cavity. It appears to me the very best that plaintiff can gain from the proofs is a speculative inference of *possibility*. There is just as much of a possibility, and I suggest the only reasonably probable inference, that the fall resulted from stepping off the porch clear of the brick space. There was consequently not enough to take the case to the jury. As this court said in the leading case of *Callahan v. National Lead Co.*, 4 N. J. 150, 154 (1950):

"Our courts have repeatedly decided that the existence of a possibility of a defendant's responsibility for a plaintiff's injuries is insufficient. In the absence of direct evidence, it is incumbent upon the plaintiff to prove not only the existence of such possible responsibility, but the existence of such circumstances as would justify the inference that the injury was caused by the wrongful act of a defendant and would *exclude* the idea that it was due to a cause with which the defendant was unconnected. While proof of certainty is not required, the evidence must be such as to justify an inference of probability as distinguished from the mere possibility * * *."

A very closely analogous factual situation is found in *Hillelson v. Renner*, 183 *Pa. Super.* 148, 130 *A. 2d* 212 (*Super. Ct.* 1957), where the court held the defendant was entitled to a direction for the same reason I urge here. I would reverse the judgment of the Appellate Division and reinstate that of the trial court.

*For affirmance*—Chief Justice WEINTRAUB, and Justices BURLING, JACOBS, FRANCIS, PROCTOR and SCHETTINO—6.

*For reversal*—Justice HALL—1.