NICHOLAS D. DeRIENZO, PLAINTIFF-APPELLANT, v. MORRISTOWN AIRPORT CORPORATION, A CORPORATION OF NEW JERSEY, DEFENDANT-RESPONDENT.

Argued October 7, 1958—Decided November 17, 1958.

232

*Mr. John E. Hughes* argued the cause for appellant (*Messrs. Shaw, Pindar, McElroy & Connell,* attorneys; *Mr. William T. McElroy,* on the brief).

*Mr. John F. Ryan* argued the cause for respondent (*Messrs. Ryan & Saros* and *Messrs. Bigham, Englar, Jones & Houston,* attorneys; *Mr. John J. Martin* and *Mr. Bernard L. Davis,* on the brief).

The opinion of the court was delivered by

WACHENFELD, J.    The plaintiff was a student in the defendant's flight instruction school and crashed while taking off on a solo practice flight in an airplane owned by the defendant.    Plaintiff brought suit to recover damages for the personal injuries he had sustained.

His case proceeded upon the theory that the crash had occurred because the "stick" in the rear seat of the plane, a dual trainer, had been tied back with a safety belt.    He charged the defendant with negligence in:    (1) failing to determine that the assigned aircraft was not reasonably safe for the intended flight;    (2) failing to determine that the rear controls of the aircraft were locked in a position rendering a safe take-off improbable;    (3) failing to warn the plaintiff of the danger of an attempted take-off in the assigned aircraft;    (4) failing to instruct the plaintiff in all of the necessary precautions essential to a safe take-off; and (5) creating the locked condition of the controls without warning to plaintiff.

The defendant denied the existence of negligence and set up the separate defenses of contributory negligence and

assumption of the risk. During the trial, it attempted to prove that plaintiff had been contributorily negligent in failing to check thoroughly the controls when he was aware that they were not acting normally prior to take-off and in gratuitously assuming, contrary to his instructions, that the elevators of the plane were working properly.

The jury returned a verdict for plaintiff in the sum of $20,000, but the Appellate Division reversed and directed that judgment be entered in defendant's favor, holding that the trial court should have granted defendant's motion for judgment of dismissal at the close of the entire case. We granted certification.

The Appellate Division's decision rested upon the ground that plaintiff's own testimony was totally incompatible with his theory of causation. As to plaintiff's evidence, it held there was "just no way of squaring his testimony with his theory of defendant's negligence."

The crash occurred at the Morristown Airport on November 23, 1954, just after the plaintiff had taken off in one of a fleet of planes maintained by defendant for the purpose of giving flight instruction.

The plaintiff was one of the defendant's students and had completed 18 hours and 45 minutes of dual instruction and 3 hours and 20 minutes of solo flying when the accident occurred. He was in the second stage of his flight training program as prescribed by the Civil Aeronautics Administration, which requires a minimum of 20 hours and 15 minutes dual and 14 hours and 45 minutes solo time before an applicant can qualify for a private pilot's license.

The plane was a dual trainer, a type in which practically all of the plaintiff's 26 flights had been taken. The craft had two sets of controls, which were identical and synchronized. In dual flights the instructor sits in the rear seat, behind the trainee, and can determine the course of the flight through the use of his second set of controls.

One of these controls is the "stick" which operates the ailerons and elevators of the plane. The ailerons are located in the wing and are controlled by a lateral movement of

the stick. The elevators are in the tail section and are activated by moving the stick back and forth, *i. e.,* toward and away from the pilot. When the stick is moved forward, the elevators are depressed, which causes the tail of the plane to rise and the nose to go down. When the stick is pulled back, the elevators rise and the opposite result ensues, the plane ascends.

The plaintiff contended that the defendant had tied back the rear stick by fastening a seat belt around it and, consequently, when he tried to level out after taking off, the plane kept going straight up, nose high, until at a height of about 50 feet it stalled, keeled over and crashed on its left side.

He testified he pulled the stick back to take off but then could not force it forward after gaining the air. If the rear stick were tied, it would of course prevent the front stick from operating since the two are synchronized. The plane in question, a Piper Super Cruiser, can take off even though its stick is all the way back and its elevators therefore completely raised. When in neutral and untied, the stick is perpendicular to the floor of the plane and has approximately a 16-inch area of movement, 8 inches forward from neutral and 8 inches back from neutral.

Admittedly, the defendant's policy was to tie down the rear stick with a seat belt when a plane was moored. This was done to prevent the control surfaces of the plane, the ailerons and the elevators, from buffeting back and forth in a wind and being damaged. Larger planes have a "gust" lock which immobilizes the control surfaces but smaller planes lack this equipment.

Shortly after the plaintiff started taking flying lessons, he was instructed in the pre-flight checks he should make before taking off. Each time he flew under supervision, the instructor would "rehash" the ritual of checks and the plaintiff would perform them under the eye of his instructor. Amongst others, he was to check the elevators for freedom of movement by manually manipulating them before he got into the plane. Once in the plane he was supposed to test

the stick by moving it as far back and forward as it would go. He was then to move the stick while watching the elevators at the same time in order to ascertain whether the elevators were responding properly to the movement of the stick. The routine of testing the stick was to be repeated after the plaintiff had taxied his plane to the runway and while he was waiting to take off.

Plaintiff testified that on the day in question he did not test the elevators by hand. One of the defendant's instructors, who was helping him check out the plane, had told him everything was all right. He also admitted he did not watch the elevators while he moved the front stick in order to determine whether they were responding properly. However, he did say that he had manipulated the stick before taking off and had found that it seemed perfectly normal except its forward movement was a little bit "sluggish."

He also testified he had brought the stick forward in order to make his plane horizontal with the runway while taking off. Because of the angle of the plane, which sits on three wheels with its nose higher than its tail, a pilot cannot see directly ahead of him during take-off unless he moves the stick forward to bring the rear wheel off the ground, which levels the plane.

In reaching its decision, the Appellate Division noted the familiar rule that on a motion for judgment of dismissal, the court should not weigh the evidence but should accept as true all the evidence which supports the view of the party against whom the motion is made and should give him the benefit of all legitimate inferences which might logically be drawn in his favor.

Although the rule was noted, we do not think it was properly applied in the instant case as our study brings us to an opposite conclusion.

The opinion of the Appellate Division reveals that its decision turned solely on a consideration of the plaintiff's own testimony, which it concluded was "completely incompatible with the theory of the locked rear stick," in that plaintiff testified that when he first got into the plane he

"was able to move the stick from side to side and back and forth, forward movement being a little sluggish."

In brief, it decided that according to the plaintiff's testimony the rear stick could not have been locked when he boarded the plane and took off and that this was contrary to his pleaded theory of negligence. Because of this, the trial court should have found that "his testimony was physically inconsistent with the theory of his case," and, on that basis, have granted a dismissal.

We cannot agree with this reasoning because there was other evidence which clearly and impressively supported plaintiff's contentions as to the cause of the accident. George Miller, an Eastern Airlines pilot, was the first person to reach the crash, shortly after it had occurred. He attempted to remove a seat cushion from the plane in order to pillow plaintiff's head but was unable to do so because the rear stick was tied back "taut." "It was not slack." He could not move it at all, not even half an inch. He was able to remove a cushion only after he had untied the rear seat belt which was fastened around the rear stick so as to keep the elevators in "full up" position. When the belt was untied and the stick thereby freed, the elevators dropped down.

Subsequently, Miller retied the stick in order to demonstrate to defendant's supervisor how he had found it. Laura Fiedler, a newspaper reporter, and Edgar Jaffe, a commercial photographer, testified to seeing the rear stick locked by the safety belt after Miller had retied it, but they stated there was a "slight slack" or "little sag" in the belt.

Miller had worked for the defendant on various occasions and was friendly with defendant's employees. He testified for both the plaintiff and the defendant. There was little reason to disbelieve his testimony, and certainly the jury was entitled to give it full credit.

The plaintiff's version as to the reaction of the stick when he tested it before taking off indicates that he may have been mistaken as to his ability to control the plane by use of the stick. The forward movement he said "seemed all

right," backward movement "seemed okay" and the lateral movement, left and right, "seemed all right." He noted the stick was "a little sluggish," yet it seemed all right. There was "a sort of sluggish movement forward, but I got, as far as I was concerned, enough movement that it felt okay." He did not think the sluggishness indicated the performance was "subnormal" but there might be "a little more effort required to push the stick forward and back." He thought the controls would "smooth out" once he was in the air.

It must be remembered that the plaintiff was still a flight student with very limited experience. He had not even completed the qualifying requirements of the Civil Aeronautics Administration, and although he had been expressly taught to inspect his plane before taking off, he had never been informed of the so-called standard practice, admittedly followed by the defendant, of tying the rear stick when the planes were grounded and moored.

By reason of his inexperience and lack of knowledge, there was ample basis to infer there was still sufficient play in the control stick to lead him to believe, contrary to the fact, that the plane could be flown. Had he been informed of the defendant's practice to tie the rear stick with the rear seat belt, thus locking the controls, the difficulty he encountered in the operation of the stick would have, by reason of the warning, made him fully cognizant of the impossibility of flying under the circumstances. The danger would have been spelled out and the take-off and the accident probably avoided.

Then, too, there is some evidence in the case indicating the condition of the control stick varied and was different at the time of the testing and taking off as contrasted with its condition when the plane was in the air. This, it was said, was due either to the attempts to operate the plane or to the "bumping" it sustained while running over the ground surface before it became airborne. Additionally, the jarring effect of the crash may have tightened the rear seat belt or have affected the movability of the stick.

The plaintiff's inexperience; the undertaking of the defendant to teach him to fly; its admitted practice of locking the controls, making a safe flight impossible; its failure to instruct the student about this practice or to warn him; its furnishing a plane with, according to Miller's testimony, the controls locked, with knowledge that the student was unaware of the condition because he had never been apprised of it; the representation at the time of the pre-flight inspection by an agent of the defendant that everything was all right—all these, taken in combination and as they reflect one upon the other, in our opinion presented a question of fact which should only have been determined by the jury.

▮▮▮ In determining whether or not there was negligence, "[t]he test is one of probability. The evidence must be such as to justify an inference of probability as distinguished from mere possibility." *Flexmir, Inc., v. Lindeman & Co.*, 4 *N. J.* 509, 514 (1950). And on a motion for dismissal:

"* * * The question is whether the trier of the facts could, on any reasonable view of the evidence, rejecting all evidence and inferences unfavorable to the plaintiff, find that the plaintiff had established the facts essential to his asserted cause of action. Is there any evidence which, if accepted and given its fullest probative force, reasonably tends to sustain the pleaded cause of action? * * * Are there facts in evidence which if unanswered would justify men of ordinary reason and fairness in affirming the question which the plaintiff is bound to maintain?" *Shellhammer v. Lehigh Valley R. R. Co.*, 14 *N. J.* 341, 345 (1954).

If "fair-minded men might honestly differ as to the conclusions to be drawn from the proofs, the questions at issue should be submitted to the jury." *Scarano v. Lindale*, 121 *N. J. L.* 549, 550 (*E. & A.* 1938). See also *O'Donnell v. Asplundh Tree Expert Co.*, 13 *N. J.* 319 (1953) ; *Antonio v. Edwards*, 5 *N. J.* 48 (1950) ; *Fischetto Paper Mill Supply, Inc., v. Quigley Co., Inc.*, 3 *N. J.* 149 (1949) ; *Schwartz v. Rothman*, 1 *N. J.* 206 (1948).

▮▮▮ The mere fact that plaintiff's testimony contains contradictions and inconsistencies does not deprive it of all probative effect.

"In this posture of the proofs the resolution of the conflict in the evidence and the credibility to be given plaintiff's testimony in the light of inconsistencies and contradictions contained in it were matters exclusively for the jury as the triers of fact and judges of the credibility of the witnesses. Our power to upset a judgment as entered upon a verdict contrary to the weight of the evidence is fundamentally remedial. We may not under the guise of that power invade the constitutional office of the jury to weigh evidence not itself inherently improbable and substitute our judgment of what testimony is credible and what is to be rejected as unworthy of belief. * * *" *Gindin v. Baron*, 16 *N. J. Super*. 1, 6 (*App. Div.* 1951).

█ The verdict may rest upon testimony contrary to the plaintiff's, if the record supplies it.

"Contrasting and evaluating logically permissible probabilities with regard to their qualities of comparative persuasiveness is the special function of the jury." *Yormack v. Farmers' Cooperative Ass'n of N. J.*, 11 *N. J. Super*. 416, 425 (*App. Div.* 1951).

"* * * and a jury might well conclude that a *party* has made a mistake as to a fact as well as any other *witness*, and therefore, if upon the whole matter the jury is of opinion that the plaintiff or defendant has proved the case, then the verdict should be for that party, although it rests upon testimony contrary to that given by the party, and despite the fact that the party gave testimony which, standing alone, might preclude a recovery. The mistake of a plaintiff or defendant cannot change facts proved by other witnesses." *Schreiber v. Public Service Ry. Co.*, 89 *N. J. L.* 183, 186 (*E. & A.* 1916).

Here, whether, under all the circumstances, the defendant took proper precautions and fulfilled its full duty of care is a question of fact on which reasonable men might well differ and is therefore an issue to be decided by a jury. *Beck v. Monmouth Lumber Co.*, 137 *N. J. L.* 268 (*E. & A.* 1947).

█ Defendant contends that plaintiff was, as a matter of law, contributorily negligent and that judgment should have been entered in its favor on this basis alone. Ordinarily, the question of contributory negligence is for the jury.

"* * * To justify a judgment on such ground as a matter of law, the contributory negligence of the plaintiff must appear clearly

and conclusively as a fact or as a necessary and exclusive inference that would be drawn by all reasonable men in the exercise of a fair and impartial judgment. In this posture of the evidence the rule is that where it is reasonably debatable as to whether or not the plaintiff exercised a degree of care commensurate with the risk of harm, the issue of contributory negligence is one for the triers of the facts. *Mellon v. Pennsylvania-Reading Seashore Lines*, 7 *N. J.* 415 (1951); *Bacak v. Hogya*, 4 *N. J.* 417 (1950). See also *Beck v. Monmouth Lumber Co.*, 137 *N. J. L.* 268 (*E. & A.* 1947); *Hyman v. Bierman*, 130 *N. J. L.* 170 (*E. & A.* 1943); *Flanigan v. Madison Plaza Grill*, 129 *N. J. L.* 419 (*Sup. Ct.* 1943), affirmed 130 *N. J. L.* 532 (*E. & A.* 1943); *Hansen v. Brown*, 123 *N. J. L.* 223 (*E. & A.* 1939); *Smith v. Adler's Millinery*, 122 *N. J. L.* 236 (*Sup. Ct.* 1939); *Robbins v. Thies*, 117 *N. J. L.* 389 (*E. & A.* 1936); *Gereghty v. Wagner*, 117 *N. J. L.* 174 (*E. & A.* 1936); *Barnett v. Atlantic City Electric Co.*, 87 *N. J. L.* 29 (*Sup. Ct.* 1915); *Albanese v. Central R. Co.*, 70 *N. J. L.* 241 (*E. & A.* 1903); *Brooks v. Consolidated Gas Co.*, 70 *N. J. L.* 211 (*E. & A.* 1903)." *Gudnestad v. Seaboard Coal Dock Co.*, 15 *N. J.* 210, 222 (1954).

The alleged contributory negligence is said to lie principally in plaintiff's failure to perform some of the pre-flight checks he had been instructed to make by defendant. In our opinion, however, the jury might justifiably have found that plaintiff was excused from making these checks by the assurance of defendant's agent that they were unnecessary on that particular occasion.

On the day in question, an instructor who had flown with plaintiff on many previous occasions helped him to check out the plane before taking off. There was some controversy at the trial over whether this instructor was still in the regular employ of defendant at the time the accident occurred, but the instructor himself testified that defendant's manager had hired him to give lessons on the afternoon that plaintiff crashed.

Plaintiff and the instructor were jointly engaged in checking the outside of the plane when the instructor was called to the telephone. According to plaintiff, the instructor had already unfastened the line mooring the tail of the plane, where the elevators are located, and as he left he said: "I'm wanted on the telephone. I got to go. But everything is

okay. You got nothing to worry about. All you have to do is gas it up."

As a neophyte in the art of flying, plaintiff would perhaps be more impressed by his instructor's assurances than would a veteran flier under similar conditions. In any event, defendant had a duty not to mislead its student into believing that his plane was safe for flight when it was not. A jury question was presented as to whether or not the defendant's own conduct had relieved plaintiff of the necessity of making a complete check of his plane before leaving the ground.

Contrary to defendant's contentions, the verdict was not against the weight of the evidence nor was it excessive. The plaintiff's injuries were severe, some of them permanent. His total outlay for medical expenses plus his loss of salary amounted to almost $1,500. The trial judge found the verdict was not so out of proportion as to warrant him in granting relief on the defendant's motion for a new trial.

For the reasons herein expressed, the judgment of the Appellate Division is reversed and the judgment of the Superior Court, Law Division, is reinstated and affirmed.

*For reversal*—Chief Justice WEINTRAUB, and Justices HEHER, WACHENFELD, BURLING, JACOBS, FRANCIS and PROCTOR—7.

*For affirmance*—None.