55 N.J. Super. 114 (1959)
150 A.2d 40
FRANK VIGGIANO, PLAINTIFF-APPELLANT,
v.
WILLIAM C. REPPENHAGEN, INC., DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued March 9, 1959.
Decided April 1, 1959.
*115 Before Judges CONFORD, FREUND and HANEMAN.
Mr. James F. McGovern, Jr., argued the cause for plaintiff-appellant.
Mr. Francis John Tarrant argued the cause for defendant-respondent (Messrs. Beggans and Keale, attorneys; Mr. James P. Beggans, of counsel; Mr. Robert E. Tarleton, on the brief).
The opinion of the court was delivered by FREUND, J.A.D.
Plaintiff, Frank Viggiano, is a laborer in the employ of United Engineers and Constructors (hereinafter "United"), which was constructing an extension at the Jersey City plant of the Public Service Electric and *116 Gas Company. He brought this negligence action to recover for personal injuries sustained on July 28, 1955 when he was struck by a dump truck owned by the sole defendant, William C. Reppenhagen, Inc. ("Reppenhagen"), and leased to United. The negligence alleged was that of Carmine Baratta, the driver of the truck, employed by Reppenhagen and supplied by it to United to operate the truck. At the conclusion of all the testimony bearing upon the issue of liability the Law Division judge granted defendant's motion for judgment on the ground that there was no evidence from which the jury could have found that Baratta was in the employ of, or otherwise subject to the control of, Reppenhagen at the time of the accident. Plaintiff appeals.
The question presented is whether Baratta, while driving the truck at the United job, remained in the employ of the defendant, or whether he temporarily became an employee of United exclusively. For the past 40 years, Reppenhagen has been engaged in the business of renting trucks under an arrangement with United and Public Service for the furnishing of trucks with drivers. The arrangement, testified to by Nicholas C. Reppenhagen, treasurer of the defendant, is as follows:
"Well, we have an order memo from Public Service to furnish trucks when required. If they call up for a truck we send it down with a man, fully maintained. * * * We get paid by the hour. * * * For everything."
The agreed price covers the wages of the driver, the cost of maintenance, repairs and profit. When a call is made, it is not for a particular driver, but for the type of truck. Reppenhagen selects the driver and tells him where to report for work. The drivers are members of a teamsters union with whom the defendant has a contract; United has no contract with this union. The drivers are paid weekly by the defendant at the defendant's premises. The trucks are garaged in, and the driver starts his day's work from, defendant's garage. With specific reference to Baratta, the driver of the truck which caused plaintiff's injuries, Reppenhagen *117 said that he had the power to hire, lay off and fire him.
On the morning of July 28, 1955, pursuant to an order from Reppenhagen, Baratta drove a snub-nosed dump truck and reported at the office of the general foreman of United, at the Public Service plant. Baratta testified that he had been operating this truck or some other truck at the Public Service plant for "about a year." On the occasion in question he was instructed by a foreman of United to transport old lumber from the south to the north yard of the plant. The lumber was loaded on the truck by two employees of United; one of them was the plaintiff. Baratta had nothing to do with the loading or unloading; he just drove the truck. United's other employee, Ralph Raino, testified that Baratta was "not allowed to touch any of our material." United's foreman did not tell Baratta what road to use, nor at what speed he should drive the truck.
After the truck was loaded, plaintiff placed himself in the cab on Baratta's right. The distance to the north yard was about half a block, and Raino walked alongside or in front of the truck. As they approached the north yard's narrow gate, plaintiff told Baratta to stop the truck. When he started to alight and was on the running board, the truck lurched or rolled. Plaintiff was thrown to the ground, and his leg was pinned under the wheel. This action was brought to recover for the injuries thus sustained.
The basis for the granting of defendant's motion and for the entry of judgment in its favor was the conclusion by the trial judge that "the uncontradicted testimony is that at the time of this occurrence the control, which is the ordering not only what shall be done, but how it shall be done was within others [not Reppenhagen]."
Accepting as true all the evidence supporting plaintiff's view and according him the benefit of all inferences to be logically and legitimately drawn therefrom, as we must, Melone v. Jersey Central Power & Light Co., 18 N.J. 163, 170 (1955), we find the determination by the trial judge that Baratta was not, as a matter of law, the servant *118 of the defendant at the time of the accident, but the servant solely of another pro hac vice, clearly erroneous.
The legal question as to whether a general employer who contracts to furnish equipment and an operator thereof to others remains liable for the negligence of the operator while performing the function contracted for, is one which is not readily answerable on the basis of the existing authorities. The most comprehensive review and analysis of the pertinent cases in our reports are to be found in the concurring opinion of Judge (now Justice) Schettino in Devone v. Newark Tidewater Terminal, Inc., 14 N.J. Super. 401, 406 (App. Div. 1951). No purpose would be served here by repetition of that summary. It is sufficient to note that it is there pointed out that while many, and frequently conflicting tests for liability of the general employer are set forth in the cases, the only one which can be supported, on principle, within the doctrine of respondeat superior, is that as to whether the workman in doing the act which causes the accident was still furthering the interest of his general employer. (14 N.J. Super., at page 415).
Since an employer is responsible for the tort of his employee acting within the scope of the employment whether or not the employer was controlling the details of the work at the time the tort occurred (e.g., the driver of a delivery truck as an employee of the defendant), there is no reason in logic or policy for abating that liability of the general employer in such a situation as that before us on the basis of whether or not the contracting-borrowing employer was exercising any degree of control or direction of the employee in respect to the execution of the details of the work to be accomplished with the supplied equipment, so long as what was being done with it was within the contemplation of the supplier in renting it to another.
As pointed out by Judge Schettino, the special employer (rentee of the equipment and operator) may make himself also liable by exercising control in a negligent manner, or make himself solely liable by directing the employee to do an act beyond the service contracted for. (14 N.J. *119 Super., at page 415.) But as long as the work being done is within the general contemplation of the supplier of the equipment and operator, its performance is furthering the interest of the general employer in the sense that it is carrying out the latter's contractual obligation. This is not less so because the operator is following directions of the so-called special employer in respect to work details. That such direction would or might occur is in the contemplation of the contracting parties. Where the supplier of the equipment and operator does so gratuitously, and not as a part of his regular business, this rationale would, of course, not be applicable. Falk v. Unger, 33 N.J. Super. 589 (App. Div. 1955).
In full accord with the foregoing philosophy is the quotation from 1 Restatement of the Law, Agency (1933), § 227, comment (b), p. 501, quoted with approval in Larocca v. American Chain and Cable Co., 13 N.J. 1, 6 (1953):
"In the absence of evidence to the contrary, there is an inference that the actor remains in his general employment so long as, by the service rendered another, he is performing the business entrusted to him by the general employer. There is no inference that because the general employer has permitted a division of control, he has surrendered it."
The foregoing comment is retained in the 1958 Restatement of the Law of Agency 2d. See also Gibilterra v. Rosemawr Homes, 19 N.J. 166, 172 (1955); Younkers v. Ocean County, 130 N.J.L. 607 (E. & A. 1943); Charles v. Barrett, 233 N.Y. 127, 135 N.E. 199 (Ct. App. 1922); 2 Harper & James, Law of Torts (1956) § 26.11, pp. 1398-1400, n. 14; Smith, "Scope of the Business: The Borrowed Servant Problem," 38 Mich. L. Rev. 1222 (1940).
It is thus seen that the better reasoned rule to be deduced from pertinent authorities is that where one is engaged in the business of renting out motor vehicles or some other apparatus and furnishes a driver or operator as part of the hiring, there is a factual presumption that the operator remains in the employ of his original employer, since he is engaged in the very occupation for which he *120 was originally so employed. So long as the employee is furthering the business of his general employer by the service rendered to another, the fact that the employee is carrying out the instruction of the hirer as to specific details of the work does not warrant the inference that there has been a change of employer in the sense of relieving the general employer of liability for the operator's negligence. It has been said that the obedience of the employee to the hirer in this connection indicates cooperation rather than subordination. Standard Oil Co. v. Anderson, 212 U.S. 215, 29 S.Ct. 252, 53 L.Ed. 480 (1909); Gilbert v. Junior Trucking Corp., 104 N.J.L. 608 (E. & A. 1928); Rongo v. R. Waddington and Sons, 87 N.J.L. 395 (Sup. Ct. 1915); Charles v. Barrett, supra; Pennsylvania Smelting & Refining Co. v. Duffin, 363 Pa. 564, 70 A.2d 270, 17 A.L.R.2d 1384 (Sup. Ct. 1950).
In the instant case, whether we apply the control test or the test whether the servant in doing the act which caused the accident was still furthering the interest of his general employer, the determination by the court as a matter of law that Baratta was the ad hoc servant of United rather than the employee of the defendant cannot be approved. The defendant was engaged in the regular business of renting trucks with an operator. The defendant alone had the power of sending a driver of its own choice; indeed, it had full control over the mechanical fitness of the vehicle. United had no financial relations with the driver. It had nothing to say on the question of how much he should be paid nor when he should work. The defendant had the right to take him off the job and substitute another, to lay him off, or to discharge him.
The fact that United's foreman instructed the driver to transport the lumber, which its employees loaded on the truck, from one part of the yard to another did not militate in the slightest against the continuance of the relationship of employer and employee between Reppenhagen and Baratta.
"[N]othing is more definitely asserted by the courts than that the status and obligations of a master are not assumed by one who *121 merely directs the operation of a hired vehicle where and when it should be driven, or, in the case of a truck, what to haul." Annotation, 17 A.L.R.2d 1388, 1394 (1951).
Nor is it of crucial significance that it was United's employee (plaintiff) who gave the direction to stop the truck when they reached the gate. Undoubtedly plaintiff and Raino were, at this point, attempting to guide and assist the driver in negotiating the truck's entry into the north yard through a narrow gate. Plaintiff's direction to stop was given to impart information to Baratta, not to subordinate him to United's control. Larocca v. American Chain and Cable Co., supra, 13 N.J., at page 7. See also 1 Restatement, Agency, § 227, op. cit. supra, comment (d), illustration 7, at pp. 503-04. In Gilbert v. Junior Trucking Corp., supra, a case involving almost identical facts, it was held that a starting signal, "roll 'em, roll 'em," given the defendant's driver by the hirer's employees, did not absolve the defendant from liability for the negligent operation of the truck.
We find scant evidence to indicate an assumption by United of the right to direct or control the operation of the truck, and surely none to indicate any exclusive right to control in United. But of decisive import is the fact that the work being done by Baratta at the time of the accident was in furtherance of the interest and of the business of Reppenhagen. As to this there is no factual dispute in the evidence. We therefore hold that Baratta remained in the employ of the defendant, and that his negligence, if any, to be determined upon a retrial of the cause, is imputable to Reppenhagen.
Reversed and remanded for a new trial.