65 N.J. Super. 554 (1961)
168 A.2d 216
J.L. QUERNER TRUCK LINES, INC., A CORPORATION, PLAINTIFF-APPELLANT,
v.
SAFEWAY TRUCK LINES, INC., A CORPORATION, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued January 3, 1961.
Decided February 24, 1961.
*557 Before Judges GOLDMANN, FOLEY and NADELL.
Mr. Horace G. Davis argued the cause for appellant.
Mr. Joseph C. Paul argued the case for respondent (Mr. Henry M. Grosman, attorney; Mr. Paul on the brief).
The opinion of the court was delivered by NADELL, J.C.C. (temporarily assigned).
Plaintiff appeals from the dismissal of the complaint at the conclusion of all the testimony in a case tried with a jury in the Superior Court, Law Division.
The suit was brought to recover property damages sustained to plaintiff's trailer, which was driven under a bridge with insufficient clearance to permit the trailer to pass through. Plaintiff Querner owned the trailer; one Lash owned the tractor. Lash leased the tractor to Querner, and Querner leased the entire equipment, tractor and trailer, to defendant Safeway. At the time of the accident Lash was driving the equipment, accompanied by one Salvato, who directed Lash as to the route to be taken to return to defendant Safeway's trucking terminal. Lash was employed and paid by Querner. Salvato was employed and paid by Safeway. Plaintiff Querner was paid one lump sum by Safeway for the use of the tractor, trailer and driver, Lash.
D'Amato, Safeway's dispatcher, directed Lash to go to New York to pick up a load of meat and return to the Safeway Terminal at Weehawken and then drive the load *558 to Chicago. D'Amato sent Salvato, a young man of 18, to accompany Lash and help load the truck in New York. As Lash was from Texas and not familiar with the route, D'Amato did not give him the New York address where the truck was to pick up the meat, but instead gave it to Salvato, who was to direct Lash as to the route to and from New York.
Lash testified that on the return trip Salvato told him to make a right turn into a street on which an overpass was located. He said he asked Salvato if the trailer would clear the underpass and Salvato responded in the affirmative, adding that he had been under it before. The truck (12'3" high) failed to clear the underpass by approximately one foot. Lash estimated his speed at the time of impact as 15 to 20 miles an hour. He said he observed no signs either on the road or the bridge indicating clearance height or a warning. Lash, who had been driving tractor-trailers for about seven years prior to the date of the accident, admitted that he didn't judge the comparative heights of the trailer and underpass "too well," but that this was due to his reliance on the representations and experience of Salvato in regard to what was unfamiliar territory.
Salvato testified that his job was completed when he directed Lash through the Holland tunnel, just prior to the accident. He admitted that, in response to a request by Lash for directions, he informed Lash he could "make a right turn at any block." He also testified that one block before the bridge there was a sign about two feet wide with a caption reading: "All Trucks Make a Left-Hand Turn. Low Bridge." He neither told Lash to turn left, nor mentioned the sign. He said that at the time of impact the truck was traveling at about 30 to 35 miles an hour.
Vincent D'Amato, a dispatcher for Safeway Truck Lines, testified that Salvato was hired as a "sight-man" for just one day. The New York address was given to Salvato, not to Lash. On cross-examination the following colloquy occurred:
*559 "Q. Mr. D'Amato, if the truck that he [Lash] was going to be on didn't know its whereabouts, or how to get to any particular destination, Mr. Salvato did the directing. Isn't that a fact?
A. That could be. Yes, sir.
Q. In this case it was the fact, wasn't it?
A. I don't know the conversation  I said before that I had no conversation with Lash. I assigned a man and where they were to go to pick up the load, Pier 25 North River.

* * * * * * * *
The Witness: I didn't give it (the New York address) to Lash. I gave it to the sight-man who was going with him.
The Court: You gave it to Salvato? You gave Salvato the address?
The Witness: That's right.
The Court: He was the man who was to see that the truck got over to New York, is that it?
The Witness: Yes, sir.
The Court: And see that it got back to the 
The Witness: Terminal, yes."
The pretrial order states:
"* * * As a result of the negligence of defendant's employee who was riding on the truck, in choosing a route which he knew or should have known contained overhead obstructions which would not clear the trailer, or in negligently assigning as such driver of the equipment one who did not possess knowledge of the route or routes to be taken, the defendant proximately caused an accident to occur. * * *"
Apparently the theory that defendant was negligent in assigning Lash as driver of the equipment has been abandoned. Plaintiff provided Lash as the driver of the equipment under the lease agreement, knowing that he would have to drive in unfamiliar territory, or at least it should so have known. Furthermore, plaintiff now asserts, in disputing the ruling of the trial court that Lash was guilty of contributory negligence as a matter of law, that the acts of Lash were those of a reasonable and prudent person and that anything that was done to cause this accident was done solely through the acts of Salvato. Plaintiff's contention must be taken as supporting an abandonment of any claim that defendant was liable in assigning Lash to drive the *560 equipment. In addition, it is clear that plaintiff is not relying for defendant's vicarious liability on any conduct of Lash. On the contrary, plaintiff asserts that Lash is free from negligence.
Accordingly, the plaintiff relies on two theories:
1. The negligence of defendant's employee, Salvato, who was riding on the truck, in choosing a route which he knew or should have known contained overhead obstructions which would not clear the trailer, proximately caused the accident, and as a result defendant is liable under the doctrine of respondeat superior.
2. The leasing transaction constituted a bailment for hire and the bailee for hire is liable for his negligence.

I.
It is axiomatic that:
"A motion for judgment of dismissal admits the truth of the plaintiff's evidence and every inference of fact that can be legitimately drawn therefrom which is favorable to the plaintiff and denies only its sufficiency in law. And on a motion for judgment the trial court cannot weigh the evidence but must accept as true all evidence which supports the view of the party against whom the motion is made and must give him the benefit of all legitimate inferences which are to be drawn therefrom in his favor." Melone v. Jersey Central Power & Light Co., 18 N.J. 163, 170 (1955).
In any case in which reasonable men might honestly differ as to the conclusions to be drawn from the evidence, the issue should be submitted to the jury. Henningsen v. Bloomfield Motors, Inc., 32 N.J. 358, 410 (1960); DeRienzo v. Morristown Airport Corp., 28 N.J. 231, 236 (1958); Honey v. Brown, 22 N.J. 433, 438 (1956); Tua v. Modern Homes, Inc., 64 N.J. Super. 211, 217 (App. Div. 1960).
We must therefore analyze the evidence to determine whether or not it is sufficient to raise issues of fact which must be submitted to a jury.

*561 II.
Essential to a bailment is that the property be turned over into the possession and control of the bailee. McFarland v. C.A.R. Corp., 58 N.J. Super. 449, 452 (App. Div. 1959); 8 C.J.S., Bailments, § 15(a), p. 248 (1938); Marsh v. American Locker Co., Inc., 7 N.J. Super. 81 (App. Div. 1950), affirmed 6 N.J. 81 (1950); Brown, Personal Property, 225, 230 (1936). See Gilson v. Pennsylvania R.R. Co., 86 N.J.L. 446 (Sup. Ct. 1914), affirmed 87 N.J.L. 690 (E. & A. 1915). Physical control of the property as well as intent to exercise control are essential elements of possession. See Restatement, Torts § 216, p. 551 (1934).
The liability of a general employer for the torts of his employee acting within the scope of his employment continues despite the fact that the special employer (defendant-rentee of the equipment and operator) was controlling the details of the work at the time the tort occurred. Viggiano v. William C. Reppenhagen, Inc., 55 N.J. Super. 114, 118 (App. Div. 1959). As long as the work being done is within the general contemplation of the supplier of the equipment and operator, the performance of that work is considered as in furtherance of the interests of the general employer in the sense that it is carrying out the latter's contractual obligation. Ibid., 55 N.J. Super., at p. 119. This is not less so because the operator is following directions of the so-called special employer in respect to work details. Ibid. Thus, in determining liability to third persons on the basis of respondeat superior, the control exercised by the special employer is not dispositive. The crucial issue is whether the employee was furthering the interests of his general employer. This is not to say that for purposes of determining whether there is a bailment, control is not the crucial issue.
In the case at bar, viewing the evidence in a light most favorable to plaintiff, it might be inferred that there was a division of control to the extent that Salvato, defendant's *562 servant, partly controlled the equipment since it was he who directed which routes Lash should drive. The evidence does not permit an inference of any greater control. Thus, the primary inquiry is whether this measure of control exerted by defendant is sufficient to constitute a bailment.
It would appear that the only sense in which defendant acquired possession of the equipment was that its servant, Salvato, rode in the cab of the tractor and directed Lash as to what routes to follow. The evidence is sufficient to sustain the inference, despite the denials of defendant, that giving such directions was in fact within Salvato's scope of employment and that he was instructed to guide Lash, in addition to helping him load and unload the trailer. At least a jury question was presented as to whether it was within the scope of Salvato's employment to direct Lash. But even assuming that the jury could find it to be within the scope of Salvato's employment to direct Lash, the evidence would not be sufficient to permit an inference of bailment.
An analogy to the parking lot cases is appropriate. In this line of cases, a bailment is almost invariably held to exist where the attendant collects a fee and assumes control or authority over the car, sometimes parking it or moving it about to permit the movement of other cars on the lot, provided the keys are left in the parked car or with the attendant. On the other hand, a parking lot proprietor is generally held not liable where the attendant collects a fee and merely designates the place where the car is to be parked, and the driver usually parks the car himself without actual delivery to or redelivery by the proprietor. McFarland v. C.A.R. Corp., supra, 58 N.J. Super., at p. 453. See Annotation, 131 A.L.R. 1175 (1941).
So here, control and possession of the trailer was never given to the defendant, except to the extent that its servant directed the route to be driven. This is similar to the parking lot attendant directing the driver where to park. Assume the attendant in a parking garage directed a driver *563 to drive his car to a certain space in the garage where the roof was too low. The roof of the car was damaged. According to the cases there would be no bailment. Similarly, where defendant, through its servant Salvato, directed Lash to drive a route which took him under a bridge that was too low, there is insufficient control or possession to constitute a bailment. The evidence cannot sustain an inference that defendant controlled the manner of operating the equipment or the details of driving it. At most, defendant controlled the routes to be taken. This measure of control was insufficient to create a bailment.
Accordingly, we find there was insufficient evidence to infer a bailment. This being so, plaintiff could not establish a prima facie case of defendant's negligence by proving the trailer was delivered to defendant in good condition and returned in a damaged state. This presumption of negligence is reserved for instances where a bailment is established. See Franklin v. Airport Grills, Inc., 21 N.J. Super. 409 (App. Div. 1952).
Consequently, for plaintiff to succeed it was incumbent upon it to present a prima facie case of defendant's negligence.

III.
In order to establish a prima facie case of negligence, plaintiff was obliged to present sufficient evidence from which it could be inferred that Salvato, defendant's servant, was negligent and that his negligence occurred within the scope of his employment or within his apparent authority. Restatement Agency, Second, § 219, p. 481 (1958). There is no evidence from which it could be inferred that defendant intended the conduct or consequences resulting in the damage, or that it was negligent or reckless, or that the conduct violated a non-delegable duty of the master. Consequently, defendant's liability must be established as being within paragraph (1) of section 219 of the *564 Restatement of Agency, or within subsection (d) of paragraph (2):
"(1) A master is subject to liability for torts of his servants committed while acting in the scope of their employment.
(2) A master is not subject to liability for the torts of his servants acting outside the scope of their employment unless:

* * * * * * * *
(d) the servant purported to act or to speak on behalf of the principal and there was reliance upon apparent authority, or he was aided in accomplishing the tort by the existence of the agency relation."
Lash, the driver, testified that after stopping at a red light he asked Salvato where to go. Salvato replied that he should turn right. Lash then said there was a trestle ahead and asked if he could make it. Salvato is alleged to have replied, "Yes, I have been under it before."
Even though Lash remained the servant of the plaintiff, the special employer (defendant-rentee of the equipment and the operator) may also be liable to third persons by exercising control in a negligent manner. Devone v. Newark Tidewater Terminal, Inc., 14 N.J. Super. 401, 415 (App. Div. 1951); Viggiano v. William C. Reppenhagen, Inc., supra, 55 N.J. Super., at p. 118. Likewise, it may be liable to the general employer for its negligent control of the rented equipment. Of course, the contributory negligence of Lash, the driver, may bar recovery by plaintiff, the general employer, against defendant, the special employer. Hence, in order to succeed on this appeal, plaintiff must show:
(1) Lash was not contributorily negligent as a matter of law;
(2) Salvato was negligent within the scope of his employment or within his apparent authority.
Insofar as the trial court found that Lash was contributorily negligent as a matter of law, its finding must be reversed. Our Supreme Court has repeatedly stated that:
*565 "* * * contributory negligence is ordinarily for the jury, and that in order to justify a judgment as a matter of law on that ground, the contributory negligence of the plaintiff must appear conclusively as a fact or as a necessary and exclusive inference that would be drawn by all reasonable men. * * *" Berger v. Shapiro, 30 N.J. 89, 102 (1959); Seipel v. Sevek, 29 N.J. 593 (1959).
If Lash's testimony were believed, and we must accept it as true on this appeal, he was travelling at a slow rate of speed, did not see any sign (although there was a small sign warning trucks to turn left), and asked Salvato whether he could make it. Surely, reasonable men might differ as to whether Lash acted with that care expected of a reasonable and prudent man in the circumstances. Consequently, Lash could not be guilty of contributory negligence as a matter of law.
DeRienzo v. Morristown Airport Corp., 28 N.J. 231 (1958), is helpful on this point. In that case a neophyte pilot failed to make certain pre-flight checks, claiming that the defendant had assured him that they were unnecessary. The subsequent crash of the plane and the resulting injuries to the plaintiff pilot could have been avoided if the pilot had made the check. In holding that a jury question was presented on the question of the pilot's contributory negligence Justice Wachenfeld stated, 28 N.J., at pages 240-241:
"Defendant contends that plaintiff was, as a matter of law, contributorily negligent and that judgment should have been entered in its favor on this basis alone. Ordinarily, the question of contributory negligence is for the jury. * * * The alleged contributory negligence is said to lie principally in plaintiff's failure to perform some of the pre-flight checks he had been instructed to make by the defendant. In our opinion, however, the jury might justifiably have found that plaintiff was excused from making these checks by the assurance of defendant's agent that they were unnecessary on that particular occasion."
And, at page 242:
"A jury question was presented as to whether or not the defendant's own conduct had relieved plaintiff of the necessity of making a complete check of his plane before leaving the ground."
*566 We find that the jury could have found that Lash, a stranger in the area, relying on the representations of Salvato, was not contributorily negligent as a matter of law when he misjudged the height of the bridge by a foot. Consequently, the trial judge should not have removed the question of contributory negligence from the jury.

IV.
It remains to be considered whether defendant could be found liable because it negligently exercised some measure of control over the trailer through its employee, Salvato. See Viggiano v. William C. Reppenhagen, Inc., 55 N.J. Super., supra, at p. 118; Devone v. Newark Tidewater Terminal Inc., supra, 14 N.J. Super., at p. 415. If there was sufficient evidence to infer that Salvato was acting within the scope of his employment or apparent authority when he indicated to Lash that he should drive underneath the bridge, it could be found that defendant negligently exercised such control. As noted before, the evidence is sufficient to justify the inference that Salvato was acting within the scope of his employment in directing Lash as to what route he should drive to return to defendant's terminal.
The only manner in which defendant could negligently exercise some control over the equipment on the facts at bar would be through the words or acts of its servant, Salvato. Using the pretrial order as a controlling guide, see R.R. 4:29-1(b), it is apparent that plaintiff's theory is that defendant is liable for the negligence of its employee in choosing a route which he knew or should have known contained overhead obstructions which would not clear the trailer. Therefore, the issue is whether defendant is liable for Salvato's having chosen and directed Lash to take a route which would damage the trailer. Salvato told Lash to take a right-hand turn off Sixteenth Street on any block that would take him in the general direction of the Safeway terminal. Lash *567 made the right-hand turn into Henderson Street where the accident occurred. A jury could find that prior to passing under the bridge he asked Salvato whether he could make it, and Salvato replied he could. In effect, a jury might infer that Salvato directed Lash to make the right-hand turn into Henderson Street and then directed him to continue on under the bridge.
There was sufficient evidence to infer that Salvato, who was given the slip with the New York address, was authorized to guide Lash to and from the Safeway terminal. Any control exercised by Salvato as to what routes Lash was to drive might be found to be within the scope of his employment. The scope of Salvato's employment was a factual issue to be decided by the jury. Whether Salvato was negligent in instructing Lash to make a right-hand turn on any street which would take him in the general direction of the terminal was also a question for the jury, especially since Salvato in effect told Lash to continue driving down Henderson Street under the bridge.
No doubt Salvato was not authorized to drive or control the tractor and trailer. He might, however, have been found to be authorized to choose the route to be driven. There was sufficient evidence for the jury to infer that he was so authorized and that he was negligent in choosing a route. Since Salvato's negligence would then be within the scope of his employment, defendant might be found vicariously liable.
Where the scope of authority of an employee is a disputed question of fact, the extent of his authority is ordinarily a question of fact for the jury. Schisano v. Brickseal Refractory Co., 62 N.J. Super. 269, 274 (App. Div. 1960). Particularly apropos to the instant case is the principle expressed in N. Rothenberg & Son, Inc. v. Nako, 49 N.J. Super. 372, 380 (App. Div. 1958):
"The question in every such case is whether the principal has, by his voluntary act, placed the agent in such a situation that a person of ordinary prudence, conversant with business usages, and *568 the nature of the particular business, is justified in presuming that such agent has authority to perform the particular act in question, and when the party relying upon such apparent authority presents evidence which would justify a finding in his favor, he is entitled to have the question submitted to the jury."
Our inquiry must, therefore, be whether there was evidence of negligence which warranted a submission of that issue to the jury. The jury could have found that Salvato, aware of the warning sign, failed to mention it to Lash, a driver totally unfamiliar with the area. The jury could also have found that Salvato, the sight-man, was instructed to direct Lash as to the proper route to take, and directed him specifically to this route on which he knew there was a low bridge, although alternate routes were available. We are not prepared to say that reasonable men might not honestly conclude that defendant's agent was negligent in the exercise of his control over the route to be taken by Lash. There is no reason why liability should not attach as well where an agent negligently exercises control over a route taken as where an agent negligently operates a vehicle. Since any contributory negligence on the part of a plaintiff operator would bar recovery against a defendant who negligently exercised control over the route to be taken, it is difficult to apprehend how any injustice could result. In the case where the operator is not at fault, policy dictates that the wrongdoer be held responsible for misdirections, thereby encouraging maintenance of a higher degree of care.
In his concurring opinion in Devone v. Newark Tidewater Terminal, Inc., supra (cited on this point in Viggiano v. William C. Reppenhagen, Inc., supra, 55 N.J. Super., at p. 118), Judge now Justice Schettino, aptly pointed out, 14 N.J. Super., at pages 414-415:
"Hence I conclude that where, as in this case, a general employer furnishes to another his equipment and servant to operate it, the sole issue is whether the servant in doing the act which causes the accident was still furthering the interest of his general employer. * * * This does not mean that a special employer may not also have some liability in these situations. If a special employer in *569 fact exercises control either over the result to be accomplished or the manner of accomplishing that result and in the exercise of either type of control is guilty of negligence which proximately causes the injury, the special employer would have to respond for his own negligence."
In Goldwyn v. Coast Cities Coaches, Inc., 129 N.J.L. 501, 504 (Sup. Ct. 1943), the court recognized the principle that one who negligently directs the driver of a vehicle may be held liable where the harm is proximately caused by the negligent direction, saying:
"The simplest case, and that which was earliest decided, was where horses and a driver were furnished by a liveryman. In such cases the hirer, though he suggests the course of the journey, and, in a certain sense, directs it, still does not become the master of the driver, and responsible for his negligence, unless he specifically directs or brings about the negligent act. * * *"
It is not inappropriate to consider the question of Salvato's duty in the frame of reference of established law relating to a mere passenger. A passenger in a vehicle is under a duty to exercise reasonable care for his own safety. Lehman v. Anderson, 27 N.J. Super. 444, 447 (App. Div. 1953), affirmed 14 N.J. 340 (1954); Kaufman v. Pennsylvania Railroad Co., 2 N.J. 318, 323 (1949); Tobish v. Cohen, 110 N.J.L. 296, 301 (E. & A. 1932). Where the passenger is aware of a danger, under circumstances indicating to him that the driver is unaware of the danger, he is under a duty to warn the driver. Ambrose v. Cyphers, 29 N.J. 138, 150 (1959). This rule comports with the weight of authority. See Restatement, Torts, § 495 (1934).
"* * * [I]t is the duty of an occupant of a vehicle to warn the driver of dangers or threatened dangers, apparently not observed or guarded against by him, of which the occupant is aware, or of which he should, in the exercise of ordinary care, be aware, unless the situation is such that a reasonably prudent person under the same or similar circumstances would not have given the warning, as where he has neither time nor opportunity to do so; and, if he fails to do so he may be chargeable with contributory negligence, provided such failure contributed proximately to cause his injury." 65 C.J.S. Negligence § 153 (1950).
*570 While it is true that a passenger's negligence is discussed in the context of contributory negligence, there is no reason why a situation cannot present itself in which a passenger is negligent, the driver is not negligent and liability attaches to the passenger. In Schroeder v. Public Service Ry. Co., 118 A. 337 (N.J. Sup. Ct. 1921), the court was required to pass on the propriety of the following instruction:
"If the man who drove the car was not contributorily negligent and the defendant was negligent under the rules which I have given you, then all plaintiffs are entitled to a verdict, the driver included."
The court, in disapproving the instruction, stated, at pages 337-338:
"The infirmity of this instruction is that it necessarily implies that the passengers owed no duty of care for their own safety in any situation wherein the driver was not himself negligent. To this we cannot agree. Even if he were free from blame, there may still well have been some thing which they or one or more of them should have seen or heard, said or done, which would have avoided the accident."
Because of his superior knowledge of an area, or because of his position in a car or truck, a passenger may be negligent whereas the driver is not. Plumb v. Minneapolis & St. Louis Railway Company, 91 N.W.2d 380 (Iowa Sup. Ct. 1958). In that case the court stated, at page 385:
"If plaintiff was a passenger in the car it does not follow he was free from contributory negligence from the fact, if it be a fact, the driver was free from negligence. The passenger occupied the right side of the seat, the direction from which the train approached, and a somewhat clearer view of it was available to him than to the driver."
Contributory negligence is conduct on the part of a plaintiff that involves an unreasonable risk of harm to him and contributes as a legal cause to his injury. Stoelting v. Hauck, 32 N.J. 87, 101 (1960). The person who has been contributorily negligent has necessarily been negligent, but because the harm to which he contributed was inflicted *571 upon himself, he cannot recover. In situations in which an individual would be guilty of contributory negligence if he had been proximately injured by that negligence, but instead his negligence proximately injures another, there is no reason why he should not be held responsible. The fact that Salvato might be barred from a recovery had he been injured when the truck struck the bridge because of contributory negligence on his part is in effect a determination that a jury could find that he was negligent.
The facts in the instant case provide a context in which the jury could find negligence on the part of the passenger, Salvato, and no negligence on the part of the driver, Lash. The jury could find that Salvato was familiar with the area, had knowledge of the sign indicating that a low bridge was on the route he directed Lash to follow, that he saw the sign just before the crash occurred, and that he failed to warn the driver, Lash. The jury could further find that Lash was not familiar with the area, that he overlooked the sign, that it was Salvato's job to direct him, and that Lash's error in judgment was one that a reasonable man could have made. If Salvato as a mere passenger was under a duty to warn the driver, certainly he was under an equal duty when riding as a sight-man for the purpose of giving route directions.
Respondent cites Viggiano v. William C. Reppenhagen, Inc., supra; Younkers v. Ocean County, 130 N.J.L. 607 (E. & A. 1943); Lacombe v. Cudahy Packing Co., 103 N.J.L. 651 (E. & A. 1927); and Courtinard v. Gray Burial & Cremation Co., 98 N.J.L. 493 (E. & A. 1923). In each of those cases the injury was proximately caused by the negligent operation of the vehicle by the employee of the general employer. Where the special employer did give instructions as to route, the injury was not the result of the directions. In none of these cases was a jury question presented as to whether the special employer exercised control "either over the result to be accomplished or the manner of accomplishing that result and in the exercise of *572 either type * * * [was] guilty of negligence which proximately" caused the injury. Devone v. Newark Tidewater Terminal, Inc., supra, 14 N.J. Super., at p. 415.
We conclude that the evidence presented a jury question as to whether Salvato was authorized by defendant to choose the route to be driven and whether he was negligent in choosing the route.
Reversed and remanded for a new trial in accordance with the opinion.
FOLEY, J.A.D. (dissenting).
I am in accord with the determination of the majority that a bailment between plaintiff and defendant was not spelled out by the proofs and, therefore, that the plaintiff could not recover on this theory.
But at this point we tread separate paths. I am in complete disagreement with the result reached on the issues of the negligence and contributory negligence of the parties.
Perhaps at the risk of oversimplification I should state what I consider to be the crucial and controlling facts of the case. Lash, owner of the tractor, who had been driving tractor trailers for about seven years, acting as a servant of the plaintiff in the course of his employment, while driving in broad day light on a public highway with a completely unobstructed view, by his own admission so misgauged the comparative heights of his employer's trailer (the dimensions of which he admittedly knew), and the height of the trestle that he missed clearance by a foot, thereby causing the damage to the trailer for which his employer now seeks to recover.
The rationale of the majority opinion is that Lash, and by operation of law his master, might be excused by a jury for this startling inadvertence, and the defendant be held liable therefor, if the jury concluded that the collision occurred because Lash relied upon the directions of route given to him by defendant's servant Salvato providing, of course, that such directions could be imputed to the authority invested in Salvato by defendant.
*573 While, as will shortly appear, I do not believe that the scope of Salvato's authorization, or what he did or said in the exercise thereof, is of determinative importance, taking the facts on the agency issue as they are stated by the majority, I think I should make it clear that in my judgment there is no evidence from which it could be reasonably inferred that the parties intended or understood that Salvato, in selecting a route, was to be charged with avoiding common hazards of travel which were as obvious to Lash as they were to him. It may be difficult to separate what Salvato actually did from what in reasonable contemplation were the bounds of his authority when it was conferred, yet the actual extent of Salvato's authority should be evaluated in the circumstances in which it was given and at the time it was given. And the extent of his apparent authority should be determined in accordance with what Lash could legitimately infer it to be in all of the circumstances. As I understand it, binding apparent authority derives not merely from the "authority" exhibited by the agent, but from a combination of the latter and some act or omission on the part of his principal that, in reasonable view, would lead a third party to believe that the agent was in fact acting for the principal. It would be unusual, to say the least, for this driver, not connected with the defendant, to submit to the judgment of a helper employed by the defendant in matters having to do with the safe operation of the tractor-trailer, and equally unusual for the defendant to assume the obligations of the driver and his employer in this respect. I perceive nothing in the evidence which would justify a jury in inferring that such was the case. On the contrary, I am convinced that the flavor and the "feel" of the authority conferred upon Salvato by his employer, in the work atmosphere which prevailed, completely negate the idea that in connection with the operation of the tractor trailer he was authorized to do anything more than point out to Lash a convenient route to and from New York.
*574 However, I have a more basic criticism of the majority views, which is that whatever may have been the authority of Salvato, Lash had no legal right to rely on Salvato's alleged assertion that the tractor-trailer could be safely driven under the overpass. The plain and simple fact is that Lash, as the driver of a vehicle on a public highway, owed an obligation to exercise reasonable care in the operation of the tractor-trailer to avoid damage to it and to the person and property of others. This was, as well it should be for the sake of public welfare, a nondelegable duty for the breach of which he and, in this case his master, were primarily answerable. To be sure, third persons might charge Salvato and his master with negligence if Salvato, acting within the scope of his authority, prompted or contributed to Lash's infraction of his duty as a driver. In such a situation Lash and Salvato, and through them plaintiff and defendant, would be jointly liable. But this is not the case. Here the dispute between the parties arises from conduct inter sese. Assuming, but not conceding, the authority in Salvato which the majority state the jury might find to have existed, there is nothing in the case  nor in the law  which would permit Lash as the operator of the vehicle to transfer to Salvato the nondelegable duty aforestated by substituting Salvato's judgment for his own in matters such as the appraisal of whether the tractor-trailer could be driven under the trestle in safety. By his own admission, this is precisely what Lash did. His testimony in that connection follows:
"Q. What was Mr. Salvato doing on the tractor-trailer during the time that he was on it? A. Showing me the directions to and from the East River.

* * * * * * * *
Q. Why did you make a right turn? A. Because Salvato instructed me to.

* * * * * * * *
Q. And when you looked in that general direction, did you see a trestle some distance ahead? A. Yes, sir.
Q. Will you tell the ladies and gentlemen of the jury exactly what happened then? A. I asked Salvato would the trailer clear it. First I asked him which way to go because it was  I mean, there *575 was streets going off to each side, left and right. And as we proceeded on down the street I asked him which way to go. And he said `straight ahead.' And I asked him about the underpass, and he said it would clear it because he had been under it before.

* * * * * * * *
Q. Did you have any conversation with Salvato immediately prior to the impact? A. I asked him again would the trailer clear the underpass.
Q. What was that? A. I asked him again would the trailer clear the underpass.

* * * * * * * *
Q. You relied entirely upon Salvato? A. That's right."
In these circumstances I can conceive of no legitimate inferable hypothesis upon which the defendant, assuming Salvato's agency, could be held liable because of Salvato's instructions, and plaintiff, bound as he was by Lash's acts or omissions, absolved for reliance by Lash on such instructions. Yet the reasoning of the majority would permit of this bizarre result.
The established test in a negligence case of whether a given set of facts requires determination by a jury of the issues of negligence and contributory negligence, is whether or not the minds of reasonable men might differ in their judgment of the negligence of the person sought to be charged. I find it incomprehensible that, if in the case sub judice these minds concluded that Salvato was negligent in advising Lash that the trestle presented no hazard, the same minds, turned to consideration of Lash's conduct, would not be obliged to conclude that Lash was at least equally at fault, for blindly proceeding on this advice in the face of a potential danger of which he, by his own admission, was fully aware.
I would affirm.