John H. and Ruth P. MARUSKA, Administrators of the Estate of Brian N. Maruska, Deceased

v.

NATIONAL RAILROAD PASSENGER CORPORATION.

John H. and Ruth P. MARUSKA, Administrators of the Estate of Brian N. Maruska, Deceased

v.

CONSOLIDATED RAIL CORPORATION.

Civ. A. Nos. 79-4729, 80-3222.

United States District Court, E. D. Pennsylvania.

Sept. 29, 1981.

Jane Mahoney, Philadelphia, Pa., for plaintiffs.

Richard L. Goerwitz, Philadelphia, Pa., for defendant.

**MEMORANDUM**

LOUIS H. POLLAK, District Judge.

On December 28, 1979, the plaintiffs, administrators Ad Prosequendum of the estate of the decedent, Brian Maruska, filed an action, No. 79–4729, against defendant Amtrak, seeking to recover damages for the death of Mr. Maruska which resulted from injuries he sustained when he was hit by an Amtrak train while working on an Amtrak track crew. After pursuing discovery in that action, plaintiffs filed a second action, No. 80–3222, against Conrail because discovery had revealed that the engineer and fireman in charge of the Amtrak metroliner that hit Mr. Maruska were in fact Conrail employees who had been "loaned" to Amtrak pursuant to the Northeast Corridor Support Services Agreement under which Conrail provides qualified employees to Amtrak and is reimbursed by Amtrak for all wages and benefits paid to those employees. Conrail has moved for summary judgment in its favor, claiming that though the engineer and fireman involved in the accident were technically on its payroll, they were "borrowed servants" under the control and supervision of Amtrak and therefore Amtrak alone must be held responsible for their allegedly negligent operation of the train.

Before reaching the merits of defendant's motion, I must first consider a choice-of-law issue which was not briefed by the parties. Jurisdiction in the second action against Conrail is based on diversity of citizenship and therefore this court must first look to the choice-of-law principles of Pennsylvania to determine which state's substantive law should be applied. *See Klaxon v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). In determining what law applies in a wrongful death action brought in Pennsylvania when the death or fatal injury occurred outside the state, the Pennsylvania Supreme Court in *Griffith v. United Airlines, Inc.*, 416 Pa. 1, 203 A.2d 796 (1964), set forth a flexible rule that looks to the state

with the most significant relationship to the action. Under the *Griffith* analysis, New Jersey law must be applied in this case since plaintiffs are New Jersey citizens and the accident occurred in New Jersey.[1]

■ Under New Jersey law, a court must consider the following two factors in determining whether liability should be imputed to the "general" employer who lends its employee or to the borrowing "special" employer: (1) the degree of supervision and control exercised by the special employer over the employee; and (2) the extent to which the work performed by the employee furthers the interest of the special employer. *See Devone v. Newark Tidewater Terminal, Inc.*, 14 N.J.Super. 401, 413–16, 82 A.2d 425, 431–32 (1955) (Schettino, J., concurring); *Viggiano v. William C. Reppenhagen, Inc.*, 55 N.J.Super. 114, 118, 150 A.2d 40, 42–43 (1959). Thus, if the special employer exercises sufficient control and the borrowed employee is found to be acting in furtherance of the special's interests, liability for the negligence of that employee may be imputed to the special even though the employee is on the general employer's payroll.

■ In response to defendant's motion, plaintiffs contend, citing *Viggiano*, that when a general employer contracts out the services of its employees to special employers, the general remains liable for the negligence of those employees since the employee is simply fulfilling the general's contractual obligation and is therefore furthering the interests of the general rather than the special employer. The defendant general employer in *Viggiano* maintained a truck leasing business and contracted with plaintiff's employer (the special) to provide trucks and personnel in return for a fixed fee which covered wages, maintenance, repair and profit; the defendant had direct control over the daily assignments of its employees, though once an assignment was made, the special could direct the details of a particular job. Noting that the special exercised only minimal control in directing the jobs to be done by the general's employee and that the employee was furthering the interest of the general's truck leasing business, the court held that the general was liable for the negligence of the employee it had provided.

Despite plaintiffs' assertion that *Viggiano* is "on four squares with the instant case" (Plaintiffs' Memorandum at 6), that case, on closer examination, clearly does not control the disposition of defendant's motion. *First* : A crucial factor in *Viggiano* was that the defendant had been in the business of leasing trucks and drivers for a substantial period of time; presumably, the success of this business depended on entering contracts with a variety of customers. By contrast, Conrail is not in the business of providing trains and train crews to other railroads for profit. It is instead an independent railroad which provides some of its employees to Amtrak pursuant to the Northeast Corridor Support Services Agreement. This arrangement does not appear to be a part of Conrail's normal commercial business; the contract under which the defendant provided equipment and services in *Viggiano*, however, was at the very heart of its business. *Second* : Amtrak was using its own trains which traveled over its own track. *Third* : Amtrak reimbursed Conrail for 100% of the wages and benefits paid by Conrail rather than paying a fixed fee under a negotiated contract as in *Viggiano*. Thus, because of the Northeast Support Services Agreement, Amtrak's method of

---

1. In the first action against Amtrak brought under the F.E.L.A., 45 U.S.C. § 51, federal common law would of course apply in determining whether the negligence of the engineer and fireman should be imputed to Conrail or Amtrak. However, since the federal "borrowed servant" analysis appears to be substantially the same as New Jersey's standard, the result in both cases is the same. *See Linstead v. Chesapeake & Ohio R. R.*, 276 U.S. 28, 34–36, 48 S.Ct. 241, 243–244, 72 L.Ed. 453 (1928) (applying an "exercise of control" and "furthering of interest" test to determine whether negligence should be imputed to general or special employer); *Kelley v. Southern Pacific Co.*, 419 U.S. 318, 325–26, 95 S.Ct. 472, 476–477, 42 L.Ed.2d 498 (1974); *Williams v. Louisville & Nashville R. Co.*, 398 F.Supp. 683, 684 (S.D. Ohio 1975).

payment effectively treated the "borrowed" Conrail employees as if they were Amtrak's own employees. *Fourth* : Amtrak exercised substantial control over the employees since the direct supervisor of the train's operations was an Amtrak road foreman; the bulletin and "19" orders concerning track conditions, proper speed, and the presence of work crews came from Amtrak; and Amtrak rules and regulations applied to the operation of the train that allegedly killed plaintiffs' decedent. *See* Northeast Corridor Support Services Agreement § 2–8 (June 19, 1979); deposition of William H. Patterson at 5, 9–10; deposition of Eugene Connor at 3–4, 6–7. Therefore, under the functional test applicable in this case, the work performed by the engineer and fireman in charge of the Amtrak train was "in furtherance of the interests" of Amtrak and was under the control of Amtrak.

For these reasons, the alleged negligence of these employees must be imputed to Amtrak and the appropriate remedy for plaintiffs is an action against Amtrak under the F.E.L.A.